RECORD NO. 13-5301

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

In The

# United States Court of Appeals
### For The District of Columbia Circuit

## FOGO DE CHAO (HOLDINGS) INC.,

*Plaintiff – Appellant*,

v.

## UNITED STATES DEPARTMENT OF HOMELAND SECURITY; JANET ANN NAPOLITANO, SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; ALEJANDRO N. MAYORKAS, DIRECTOR, U.S. DEPARTMENT OF CITIZENSHIP AND IMMIGRATION SERVICES; DANIEL M. RENAUD, DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICES – VERMONT SERVICE CENTER,

*Defendants – Appellees*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

─────────────

## BRIEF OF APPELLANT

─────────────

Carl W. Hampe                      On Brief:
Steve Chasin                          Timothy C. D'Arduini
BAKER & MCKENZIE LLP
815 Connecticut Avenue, NW            Not admitted before the
Washington, DC  20006                 U.S. Court of Appeals for the
(202) 452-7000                        D.C. Circuit

*Counsel for Appellant*

## CERTIFICATE AS TO PARTIES, RULINGS,
## AND RELATED CASES

**Parties and Amici:**

1.     District Court:  Plaintiff was Fogo de Chão Churrascaria (Holdings)

LLC, which merged with and into Fogo de Chão (Holdings) Inc. while the District

Court litigation was pending.  Defendants were (i) U.S. Department of Homeland

Security; (ii) Janet Napolitano, Secretary, U.S. Department of Homeland Security;

(iii) U.S. Citizenship and Immigration Services; (iv) Alejandro Mayorkas,

Director, U.S. Citizenship and Immigration Services; and (v) Daniel Renaud,

Director, U.S. Citizenship and Immigration Services - Vermont Service Center.

2.     Court of Appeals:  Appellant is Fogo de Chão (Holdings) Inc.

Appellees are the same as the Defendants in the District Court, with the exception

of Jeh Johnson, who replaces Janet Napolitano.

**Rulings Under Review:**

The ruling under review is the Memorandum Opinion entered by the

Honorable Reggie B. Walton on August 9, 2013, 10-cv-1024, ECF No. 56,

available at *Fogo v. United States Dep't of Homeland Sec.*, 2013 U.S. Dist. LEXIS

112468, 2013 WL 4041510 (D.D.C. Aug. 9, 2013) (App.85-11).

i

**Related Cases:**

This case was not previously before this Court or any other court (other than the District Court).  Appellant is not aware of any related cases pending before this or any other court.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Circuit Rule 26.1, Appellant Fogo de Chão (Holdings) Inc. ("Fogo") states that it is a holding company for wholly-owned subsidiaries operating upscale, authentic *churrascarias* (Brazilian steakhouses) throughout the United States.  Fogo Inc.'s parent corporation is Brasa (Holdings) Inc., a Delaware corporation.  Through two intermediary Delaware corporations (Brasa (Purchaser) Inc. and Brasa (Parent), Inc.), investment funds formed by Thomas H. Lee Partners, L.P., a private equity firm, and managed by an affiliated registered investment adviser (THL Managers VI, LLC) own 100% of Fogo Inc. and Brasa (Holdings) Inc.  No publicly-held corporation owns 10% or more of the stock of Brasa (Holdings) Inc. or of Fogo Inc.

## TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND
RELATED CASES ...................................................................................i

CORPORATE DISCLOSURE STATEMENT ....................................... iii

TABLE OF CONTENTS...........................................................................iv

TABLE OF AUTHORITIES ................................................................. viii

GLOSSARY................................................................................................xv

STATEMENT OF JURISDICTION......................................................1

INTRODUCTION ....................................................................................1

STATEMENT OF ISSUES ....................................................................3

STATUTES AND REGULATIONS .....................................................4

STATEMENT OF THE CASE...............................................................4

    I.      GENERAL BACKGROUND .....................................................4

        A.    Fogo de Chao .....................................................................4

        B.    The L-1B "Specialized Knowledge" Visa ...................5

        C.    Legacy INS and USCIS Approved 251 Fogo L-1B
            Petitions.............................................................................9

        D.    The 2006 OIG Report .....................................................9

        E.    USCIS Begins Denying Fogo's L-1B Petitions Without
            Explanation ....................................................................11

    II.    THE GASPARETTO PETITION .........................................12

A. The Gasparetto Petition and VSC's Response..........................12

B. USCIS Announces that It Will Deny *All* Fogo
*Churrasqueiro* L-1B Petitions ...................................................14

C. Criticism from USCIS Ombudsman .........................................14

D. USCIS's Administrative "Reopening" .....................................15

    1. Fogo's Supplemental Evidence ......................................15

    2. Fogo's Reopening Brief..................................................17

    3. The VSC's "Reopened" Decision ..................................18

III. THE AAO'S DECISION ..................................................................20

IV. EVENTS LEADING TO THE DISTRICT COURT'S
DECISION ........................................................................................22

V. THE DISTRICT COURT'S SUMMARY JUDGMENT
DECISION ........................................................................................22

SUMMARY OF ARGUMENT ................................................................24

STANDING ...............................................................................................24

ARGUMENT .............................................................................................25

I. STANDARD OF REVIEW ...............................................................25

II. THE AAO ENGAGED IN ARBITRARY AND CAPRICIOUS
CONDUCT BY IGNORING EVIDENCE OF MR.
GASPARETTO'S L-1B ELIGIBILITY, AND THE DISTRICT
COURT'S *POST-HOC* RATIONALIZATION OF THE AAO'S
DECISION MUST BE REJECTED....................................................26

A. The AAO Acted Arbitrarily and Capriciously by
Disregarding Evidence in the Record .......................................26

1.  Fogo Provided Definitive Evidence of Mr. Gasparetto's Completion of the Training Program ........26

2.  Agency Disregard of Record Evidence Is Arbitrary and Capricious Conduct and Violates the Substantial Evidence Rule ...............................28

3.  The AAO's Failure to Consider Fogo's Documentary Evidence Was Arbitrary and Capricious ...................................................30

B.  Affidavit Evidence Need Not Be Corroborated, and Requiring Otherwise Was Prejudicial Error ............................32

1.  The District Court Relied on Inapplicable Authority to Discount Fogo's Evidence ........................33

2.  Uncorroborated Affidavit Evidence Alone Is Valid in this Proceeding ...........................................35

C.  The District Court and the Government Engaged in Prohibited *Post-Hoc* Rationalization of the AAO's Finding that No Evidence of Training-Program Completion Existed.................................................38

D.  The AAO's Evidentiary Failure Resulted in Prejudice to Fogo....................................................................41

E.  Fogo Satisfied Its Burden of Proof by a Preponderance of the Evidence ............................................................42

III.  FOGO ADVANCED LEGAL GROUNDS FOR REVERSAL OF THE AAO DECISION.................................................46

A.  USCIS Violated the APA By Departing from Precedent Without Notice and Comment Rulemaking.............................46

1.  The APA Prohibits Agencies from Changing Regulatory Precedent Without Explanation ..................46

vi

2.     Agencies Must Establish New Regulatory Precedent Through Formal Adjudication or Notice and Comment ................................................................49

3.     The District Court Ignored USCIS's Own Ombudsman When Concluding It Followed the Puleo and Ohata Memos ..................................................51

B.     USCIS Impermissibly Prejudged Mr. Gasparetto's Case .........51

1.     D.C. Circuit Case Law Requires Reversal of Agency Decisions Infected by Prejudgment .................51

2.     USCIS Prejudged Key Adjudicative Facts, Requiring Reversal .......................................................53

IV.     THE DISTRICT COURT ERRONEOUSLY APPLIED *CHEVRON* AND *SKIDMORE-MEAD* DEFERENCE .......................54

A.     *Chevron* is Inapplicable Because the AAO Decision Does Not Carry "the force of law" ....................................................56

1.     *Mead* Sets the Procedural Requirements for *Chevron* Deference .........................................................56

2.     Application of *Mead* .....................................................57

3.     Unpublished, Non-precedential AAO/BIA Decisions Do Not "carry the force of law" ..................58

4.     The AAO Decision Here Lacks the "Force of Law" ...............................................................................60

B.     *Skidmore-Mead* Deference also Does Not Apply ....................61

CONCLUSION ...........................................................................................63

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*1756, Inc. v. Att'y Gen. of U.S.*,
  745 F. Supp. 9 (D.D.C. 1190)........................................................................32

*Alaska Prof'l Hunters Ass'n v. FAA*,
  177 F.3d 1030 (D.C. Cir. 1999)..............................................................49, 50

*\*Alpharma, Inc. v. Leavitt*,
  460 F.3d 1 (D.C. Cir. 2006)...........................................................29, 30, 39

*\*ANR Pipeline Co. v. FERC*,
  71 F.3d 897 (D.C. Cir. 1995)..................................................................47, 48

*Ass'n of Data Processing Serv. Orgs., Inc. v.*
*Bd. of Governors of Fed. Reserve Sys.*,
  745 F.2d 677 (D.C. Cir. 1984).......................................................................29

*Barrios v. Holder*,
  581 F.3d 849 (9th Cir. 2008) .......................................................................57

*Burlington Truck Lines, Inc. v. United States*,
  371 U.S. 156 (1962)...............................................................................52, 53

*Brady Campaign to Prevent Gun Violence v. Salazar*,
  612 F. Supp. 2d 1 (D.D.C. 2009)...........................................................47, 49

*\*Butte County v. Hogen*,
  613 F.3d 190 (D.C. Cir. 2010)........................................................29, 30, 31

*Carpio v. Holder*,
  592 F.3d 1091 (10th Cir. 2010) ...................................................................58

*\*Chief authorities are denoted by an asterisk*

*Cervantes v. Holder*,
  597 F.3d 229 (4th Cir. 2010) ........................................................................58

*\*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984)........................................................2, 3, 24, 54, 55, 56,
                                                         57, 58, 59, 60, 61, 62

*Cho v. INS*,
  669 F.2d 936 (4th Cir. 1982) ........................................................................36

*Christensen v. Harris Cnty.*,
  529 U.S. 576 (2000)................................................................................57, 58

*\*Cinderella Career & Finishing Schools, Inc. v. FTC*,
  425 F.2d 583 (D.C. Cir. 1970)................................................................52, 54

*City of Arlington, Tex. v. FCC*,
  133 S. Ct. 1863 (2013)..................................................................................56

*Comcast Corp. v. FCC*,
  579 F.3d 1 (D.C. Cir. 2009) ..........................................................................29

*Concrete Pipe & Prods. of Cal., Inc. v. Constr.*
*Laborers Pension Trust for So. Cal.*,
  508 U.S. 602 (1993).......................................................................................28

*De Leon-Ocha v. Attorney General of the United States*,
  622 F.3d 341 (3d Cir. 2010) ..........................................................................60

*Dobrova v. Holder*,
  607 F.3d 297 (2d Cir. 2010) ..........................................................................58

*Echostar Comm. Corp. v. FEC*,
  292 F.3d 749 (D.C. Cir. 2002).......................................................................36

*El Rio Santa Cruz Neighborhood Health Cntr., Inc. v.*
*Dep't of Health & Human Servs.*,
  396 F.3d 1265 (D.C. Cir. 2005).....................................................................40

*Evangelical Lutheran Church of America v. INS,
    228 F. Supp. 2d 23 (D.D.C. 2003).................................................................40

Exposing Truth About Casinos v. Kempthorne,
    492 U.S. 460 (D.C. Cir. 2007)......................................................................59

Fla. Power & Light Co. v. Lorion,
    470 U.S. 729 (1985).......................................................................................63

FPC v. Texaco Inc.,
    417 U.S. 380 (1974).......................................................................................39

Fund for Animals v. Norton,
    294 F. Supp. 2d 92 (D.D.C. 2003)...............................................................47

Garcia-Quintero v. Gonzales,
    455 F.3d 1006 (9th Cir. 2006) .................................................................57, 60

Godinez-Arroyo v. Mukasey,
    540 F.3d 848 (8th Cir. 2008) .......................................................................58

Gonzales v. Oregon,
    546 U.S. 243 (2006).....................................................................................56

Hatch v. FERC,
    654 F.2d 825 (D.C. Cir. 1981).............................................................46, 47, 49

Honeywell Int'l, Inc. v. EPA,
    372 F.3d 441 (D.C. Cir. 2004)......................................................................36

Honeywell Int'l Inc. v. Nuclear Regulatory Commission,
    628 F.3d 568 (D.C. Cir. 2010)......................................................................46

Int'l Internship Program v. Napolitano,
    718 F.3d 986 (D.C. Cir. 2013)......................................................................60

Int'l Internship Programs v. Napolitano,
    853 F. Supp. 2d 86 (D.D.C. 2012).............................................................58, 59

*Jicarilla Apache Nation v. Dep't of Interior,
    613 F.3d 1112 (D.C. Cir. 2012).........................................................26, 41, 42

La. Pub. Serv. Comm'n v. FERC,
    184 F.3d 892 (D.C. Cir. 1999)...............................................................47, 48

*Lacson v Dep't. of Homeland Sec.,
    726 F.3d 170 (D.C. Cir. 2013).................................................................36, 39

Leia v. Ashcroft,
    393 F.3d 427 (3d Cir. 2005) ........................................................................31

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992)......................................................................................25

Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,
    132 S. Ct. 2199 (2012)..................................................................................25

Matter of GST,
    WAC-07-277-53214 (AAO July 22, 2008)............................................14, 64

*Matter of Mogharrabi,
    19 I.&N. Dec. 439 (BIA 1987).................................................................34, 35

Matter of S-A- ,
    22 I.&N. 1328 (BIA 2000) .................................................................33, 34, 35

Matter of Skirball,
    25 I.&N. Dec. 799 (BIA 2012).................................................................34, 35

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,
    463 U.S. 29 (1983)..................................................................29, 30, 52, 54

Murphy v. INS,
    54 F.3d 605 (9th Cir. 1995)...................................................................33, 35, 36

Mushtaq v. Holder,
    583 F.3d 875 (5th Cir. 2009) ......................................................................58

*Navas v. INS*,
    217 F.3d 646 (9th Cir. 2000) .........................................................40

*New Life Evangelistic Cntr. v. Sebelius*,
    753 F. Supp. 2d 103 (D.D.C. 2010)...............................................40

*PDK Labs, Inc. v. DEA*,
    362 F.3d 786 (D.C. Cir. 2004)..................................................41, 42

*Pub. Citizen v. Heckler*,
    653 F. Supp. 1229 (D.D.C.1986)....................................................40

*Quinchia v. Att'y Gen.*,
    552 F.3d 1255 (11th Cir. 2008) .....................................................58

*Republic of Transkei v. INS*,
    923 F.2d 175 (D.C. Cir. 1991)........................................................32

*Rotimi v. Gonzales*,
    473 F.3d 55 (2d Cir. 2007) .............................................................57

*SEC v. Chenery Corp.*,
    332 U.S. 194 (1947)........................................................................39

*Shinseki v. Sanders*,
    129 S. Ct. 1696 (2009)....................................................................41

*Skidmore et al. v. Swift & Co.*,
    323 U.S. 134 (1994)................................................ 3, 64, 55, 57, 61, 62, 63

*Tenneco Gas v. FERC*,
    969 F.2d 1187 (D.C. Cir. 1992).......................................................30

*Unification Church v. Att'y Gen. for U.S.*,
    581 F.2d 870 (D.C. Cir. 1978)........................................................41

*United States v. Mead*,
    533 U.S. 218 (2001)...................................... 3, 54, 55, 56, 57, 58,
                                            59, 60, 61, 62, 63

*World Wildlife Fund v. Hodel*,
    1988 WL 66193 (D.D.C. June 17, 1988) ......................................................40

## CONSTITUTIONAL PROVISION

U.S. CONST. amend. art. III, § 2 ...........................................................24

## STATUTES

5 U.S.C. § 553 .............................................................................50

5 U.S.C. § 555(e) .........................................................................29

5 U.S.C. § 706 .....................................................................29, 37, 44

5 U.S.C. § 706(2) .........................................................................28

5 U.S.C. § 706(2)(A) ......................................................................26

8 U.S.C § 1101(a)(15)(L) (INA 101(a)(15)(L)) ..................................6, 31

8 U.S.C. § 1184(c)(2)(B) ..................................................................7

8 U.S.C. § 1184(c)(3), INA 214(c)(3) ....................................................31

8 U.S.C. § 1291 .............................................................................1

## REGULATIONS

52 Fed. Reg. 5738, 5752 (Feb. 26, 1987) ...........................................7, 45

56 Fed. Reg. 31553, 31554 (July 11, 1991) .......................................8, 11, 49

56 Fed. Reg. 61111, 61128 (Dec. 2, 1991) ..............................................8

8 C.F.R. § 103.5(a)(5) ....................................................................15

8 C.F.R. § 103.5(a)(5)(ii) .............................................................15, 18

8 C.F.R. § 214.2(l)(1)(ii)(D) ...............................................7, 8, 17, 18, 31, 43

8 C.F.R. § 214.2(l)(3)(ii)........................................................................31

8 C.F.R. § 214.2(l)(3)(iv)........................................................................35

**OTHER AUTHORITIES**

9 FAM 41.54 N.7.2-2...............................................................................32

Department of Homeland Security, Office of the Inspector General's Report,
OIG-06-22 (Jan. 2006)..............................................................9, 10, 11, 21, 46,
49, 51, 53, 61, 62

H. Rep. 91-851 (Feb. 24, 1970), *reprinted in*
1970 U.S.C.C.A.N. 2750 .........................................................................6

L-1 Visa Reform Act of 2004, 118 Stat. 3352 (Dec. 8, 2004)............................9, 10

MERRIAM-WEBSTER 2014 ...........................................................................45

Pub. L. No. 91-225 (Apr. 7, 1970).............................................................6

Pub. L. No. 101-649 (Nov. 29, 1990), 104 Stat. 5023 at § 206(b)(2)(B)............6, 45

U.S. Citizenship and Immigration Services Ombudsman
Annual Report 2010 (June 30, 2010)...................................... 14, 21, 46, 49, 50, 51,
53, 61, 62, 63, 64

# GLOSSARY OF TERMS

1970 Act—1970 amendments to the Immigration and Naturalization Act of 1952 (P.L. 91-225 (Apr. 7, 1970))

1990 Act—Immigration Act of 1990 (P.L. 101-649 (Nov. 29, 1990))

2004 Act—L 1 Visa Reform Act of 2004 (P.L. 108-447 (Dec. 8, 2004))

AAO—Administrative Appeals Office

APA—Administrative Procedure Act

App.—Appendix

Add.—Addendum

BIA—Board of Immigration Appeals

*Churrascaria*—Portuguese term for Brazilian steakhouse, such as those operated by Fogo de Chao

*Churrasqueiro*—Portuguese term for chefs/waiters who convey gaucho culinary traditions to patrons of Fogo de Chao

DHS—Department of Homeland Security

INS—Legacy Immigration and Naturalization Service

OIG—Office of Inspector General

USCIS—U.S. Citizenship and Immigration Services

VSC—Vermont Services Center

## STATEMENT OF JURISDICTION

This Court has jurisdiction to review the District Court's August 9, 2013 decision under 8 U.S.C. § 1291.

## INTRODUCTION

Appellant Churrascaria Fogo de Chao ("Fogo de Chao" or "Fogo") appeals the District Court's grant of summary judgment for appellee U.S. Citizenship and Immigration Services ("USCIS" or the "Government") with respect to Fogo's challenge to USCIS's unlawful adjudication of an intracompany transferee ("L-1B") visa for one of its multinational employees in a position requiring "specialized knowledge."  Between 1997 and 2006, USCIS approved 251 of these L-1B visa petitions by Fogo.  But around 2007, USCIS began systematically denying Fogo's L-1B petitions—although based on the same basic underlying facts, and the same statutes, regulations, and policy memoranda—as the prior approvals.

This case arises from USCIS's denial of Fogo's L-1B petition on behalf of Mr. Rones Gasparetto, nearly four years ago, following a prolonged administrative process.  The final agency decision at issue erroneously claimed that Fogo failed to provide requisite evidence for the L-1B visa.  The decision did not acknowledge the agency's own internal policy documents showing deliberate violation—since around 2006—of the legal and regulatory framework governing the L-1B visa.

1

The District Court reviewed this decision, and concluded that "the essential problem with the Gasparetto Petition was one of insufficient evidence." (App.109). Although the agency decision found that Fogo had submitted "no evidence," the District Court recognized there was key evidence for visa eligibility in the record. But the District Court impermissibly supplied its own *post-hoc* rationalization that Fogo's evidence lacked sufficient "corroboration." Based on its evidentiary findings, the District Court relied on inapplicable authority to dismiss as "harmless error" Fogo's legal challenges to USCIS's systemic misadjudication of the L-1B visa. The District Court also mistakenly applied *Chevron* deference to USCIS's regulatory construction of the statute, even though Fogo was only challenging USCIS's unauthorized departure from such construction. The District Court did find "potentially troubling" USCIS's determination, on the record, to deny *all* future Fogo L-1B petitions as categorically unqualified. Nevertheless, the District Court—like USCIS—never acknowledged the key agency documents reflecting the greater, systemic violation at issue here.

This appeal will show (i) there was ample evidence supporting the Gasparetto Petition and "specialized knowledge" eligibility, (ii) USCIS knowingly departed from regulatory precedent without a reasoned explanation or proper notice and public comment, and (iii) USCIS improperly prejudged the L-1B

adjudication under review here.  With the presence of these unusual facts, we respectfully request this Court reverse and remand with specific instructions to USCIS to adjudicate the petition under the applicable rules.

## STATEMENT OF ISSUES

1.  Whether the AAO acted arbitrarily and capriciously by ignoring substantial evidence in the record establishing Mr. Gasparetto's qualifications for L-1B status.

2.  Whether the District Court impermissibly adopted a *post-hoc* rationalization—one premised on an invalid corroborative evidence standard—to conclude that Fogo had provided insufficient evidence of Mr. Gasparetto's qualifications for L-1B status.

3.  Whether USCIS departed from regulatory precedent without explanation, and without providing notice and an opportunity to comment, in contravention of the Administrative Procedure Act ("APA"), when adopting a stricter interpretation of the L-1B regulations in 2007.

4.  Whether evidence in the record of USCIS's prejudgment of Fogo's L-1B petition constitutes arbitrary and capricious agency conduct, requiring a remand to USCIS with specific instructions.

5.  Whether the District Court erred in affording *Chevron* or *Skidmore/Mead* deference to USCIS's interpretation of "specialized knowledge," when Fogo was

criticizing USCIS's unexplained departure from regulatory precedent, not the current text of such precedent.

## STATUTES AND REGULATIONS

The relevant statutes and regulations are contained in a bounded addendum to this brief.

## STATEMENT OF THE CASE

### I.      GENERAL BACKGROUND.

#### A.      Fogo de Chao.

Fogo de Chao owns and operates *churrscarias* (Brazilian steakhouses) that authentically convey the culinary and festive traditions of the gauchos of the Southern Brazilian pampas.  (App.453).  Fogo recreates the experience of *churrasco*—the traditional barbecue of the gauchos of the rural Rio do Sul region—by employing genuine gaucho chefs (known as *churrasqueiros*), who were raised in gaucho families in the Rio Grande do Sul area and learned as boys the traditional role that men play in cooking and serving *churrasco* at family and community gatherings characteristic of that region.  (App.453-54).

Fogo opened its first *churrascaria* in 1979 in Brazil, where it now has six locations.  (App.453).  Encouraged by its success in Brazil, Fogo opened its first U.S. *churrascaria* in 1997.  (App.454).  Today, Fogo has 17 locations in the United States.  *Id*.  The key to Fogo's U.S. success has been its ability to staff each

4

of its U.S. restaurants with approximately 3-5 genuine gaucho *churrasqueiros* who transfer from Fogo's Brazilian restaurants. (App.461). As of 2010, the company's global revenue was $168 million, of which the U.S. restaurants generated $122 million. (App.455). In 2010, Fogo employed approximately 1,030 people in the United States, of which **only** 41 were intracompany transfers. (App.454-55).

Fogo's Brazilian restaurants recruit and hire for the *churrasqueiro* position gauchos from the Rio Grande do Sul region who grew up with the *churrasco* tradition. (App.454). The new hires are put through an initial "probation" period, during which many fail for lack of skills. (App.455). The remaining new hires are then placed into the company's training program. (App.459-60). These *churrasqueiros*, after completing a training program and working for a minimum of two years at Fogo's Brazilian restaurants, are considered for a transfer to Fogo's US operations. (App.460). If chosen, the legal apparatus for the transfer is the L-1B "specialized knowledge" visa. *Id*.

### B. The L-1B "Specialized Knowledge" Visa.

Congress created the "L-1" visa in 1970 by amending the Immigration and Naturalization Act of 1952 to enable multinational corporations to transfer to their U.S. operations foreign personnel employed in a "capacity . . . involving

5

specialized knowledge."[1]  *See* Pub. L. No. 91-225 (Apr. 7, 1970) (the "1970 Act")

(Add.-1).  The statutory framework from 1970 remains basically unchanged today.

The law provides a visa for an alien:

> who, within 3 years preceding the time of his application for
> admission into the United States, has been employed continuously for
> one year by a firm or corporation or other legal entity or an affiliate or
> subsidiary thereof and who seeks to enter the United States
> temporarily in order to continue to render his services to the same
> employer or a subsidiary or affiliate thereof <u>in a capacity that is
> managerial, executive, or involves specialized knowledge</u>, and the
> alien spouse and minor children of any such alien if accompanying
> him or following to join him.

*See* 8 U.S.C § 1101(a)(15)(L) (Add.-12).

Congress did not define "specialized knowledge" in the 1970 Act.  Legacy

Immigration and Naturalization Service ("INS") therefore filled the vacuum with

its own interpretation.  The INS chose to construe the statutory term "specialized

knowledge" narrowly, relying on the 1970 Act's legislative history indicating that

the "'L' category will not be large" and that the class "is narrowly drawn and will

be carefully regulated."  H. Rep. 91-851 (Feb. 24, 1970), *reprinted in* 1970

U.S.C.C.A.N. 2750, 2754 (Add.-25).  In 1987, the INS promulgated a regulatory

definition of "specialized knowledge" that effectuated this narrow construction by

(i) imposing a "US labor market test," and (ii) requiring that transferees have

---

[1] Congress perceived that "existing law restricts and inhibits the ability of
international companies to bring into the U.S. foreign nationals with management,
professional, and specialist skills."  H. Rep. 91-851 (Feb. 24, 1970), *reprinted in*
1970 U.S.C.C.A.N. 2750, 2751 (Addendum-22) (hereafter, "Add.-__").

6

"propriety knowledge" of the company product or service.  52 Fed. Reg. 5738, 5752 (Feb. 26, 1987) at 8 C.F.R. § 214.2(l)(l)(ii)(D) (Add.-107).

The agency's restrictive requirements were short-lived.  In 1990, Congress provided its own statutory definition of "specialized knowledge" in the Immigration Act of 1990 (the "1990 Act"), P.L. 101-649 (Nov. 29, 1990), 104 Stat. 5023 at § 206(b)(2)(B) (Add.-8).  Congress' new definition broadened the standard by expressly rejecting the above-mentioned "proprietary knowledge" and "U.S. labor market" requirements—without imposing any new tests or restrictions to offset these deletions.  *Id.*  Rather, the new 1990 statutory definition—which remains the standard today—provides for one of two alternative showings of "specialized knowledge":

> [A]n alien is considered to be serving in a capacity involving specialized knowledge with respect to a company **if** the alien has a special knowledge of the company product and its application in international markets **or** has an advanced level of knowledge of processes and procedures of the company.

*Id.*; 8 U.S.C. § 1184(c)(2)(B) (Add.-15) (emphasis added).

In response, the INS in 1991 issued new implementing regulations.  The regulatory Preamble explicitly acknowledged Congress' intent behind the 1990 Act:

> **The intent of [the 1990 Act] as** it relates to the L classification **was to broaden its utility for international companies**.  **To comply with Congressional intent**, this proposed rule adopts the more liberal definition of manager and executive now specified in section

7

> 101(a)(44)(A) and (B) of the Act. . . . . The L regulations have also been modified to include ***a more <u>liberal</u> interpretation*** of specialized knowledge defined in section 214(c)(2)(B) of the Act.

56 Fed. Reg. 31553, 31554 (July 11, 1991) (Add.-113) (emphasis added). The

resulting INS regulatory definition—still valid today—closely mirrors Congress'

expanded definition:

> 'Specialized knowledge' means <u>special knowledge possessed by an individual of the petitioning organization's product, service, research, equipment, techniques, management, or other interests and its application in international markets, or an advanced level of knowledge</u> **or** <u>expertise in the organization's process and procedures.</u>

*Id*. at 31564 (Proposed). This definition was adopted without change at 56 Fed.

Reg. 61111, 61128 (Dec. 2, 1991) (Add.-153); 8 C.F.R. § 214.2(1)(l)(ii)(D) (Add.-

88).

In 1994, the INS issued a policy guidance commonly called the "Puleo

Memo." (App.42-45). The Puleo Memo highlights that Congress had effectuated

a new "lesser, but still high, standard" for specialized knowledge. (*Id*. at 42). It

also states that this new standard is met where 1) the alien's knowledge is

"uncommon, noteworthy, or distinguished by some unusual quality and not

generally known by practitioners in the alien's field of endeavor," *id*. at 45, and (2)

it "would be difficult to impart to another individual without significant economic

inconvenience to the U.S. or foreign firm, *id*. at 44. The Puleo Memo never has

been rescinded.[2]

### C.     Legacy INS and USCIS Approved 251 Fogo L-1B Petitions.

Under the post-1990 Act regime, Fogo applied for its first L-1B visas for the

opening of its first U.S. restaurant in 1997. The Service approved Fogo's petitions.

Over the remaining decade, the Service approved 251 Fogo L-1B petitions

for its genuine gaucho *churrasqueiro* transferees. (App.676). This positive pattern

of adjudication enabled Fogo's expansion throughout the United States. Fogo

relied upon this pattern to sustain a small (three to five) but critical flow of

*churrasqueiro* transferees to each of its U.S. *churrascarias*. (App.454).

### D.     The 2006 OIG Report

In response to public scrutiny about IT outsourcing, Congress enacted the

L-1 Visa Reform Act of 2004, 118 Stat. 3352 (Dec. 8, 2004) (the "2004 Act")

---

[2] In 2002, USCIS reminded adjudicators to adhere to the Puleo Memo. *See* USCIS Memorandum, Fujie Ohata, Director, Service Center Operations, "Interpretation of Specialized Knowledge," (Dec. 20, 2002) (hereinafter the "2002 Ohata Memo") (App.46). Again, in 2004, USCIS confirmed that the Puleo Memo "still remains in effect." *See* USCIS Memorandum, Fujie Ohata, Director, Service Center Operations, "Interpretation of Specialized Knowledge for Chefs and Specialty Cooks," (Sept. 9, 2004) (hereinafter the "2004 Ohata Memo") (App.48). Despite explaining that typical "specialty chefs" did not satisfy the "specialized knowledge" definition, the 2004 Ohata Memo explained the circumstances under which comparable restaurant employees with additional or special skills indeed could satisfy this statutory term. (*Id*. at 48-49, 51). Fogo successfully obtained approvals of its L-1B petitions after the issuance of the 2004 Ohata Memo.

(Add.-18-20), which prohibited L-1B usage for outsourcing. But, Congress rejected calls to narrow or delete the "specialized knowledge" definition. *Id*.

DHS's Office of Inspector General ("OIG") issued a comprehensive report on the L-1 visa in January 2006. (App.496). That report acknowledged that the "specialized knowledge" definition may not be sufficiently restrictive, but warned that the Service cannot "tighten" the standard without Congressional action. (App.506-07). Specifically, the OIG confirmed that through the 1990 Act, Congress "***specifically provided for a less stringent definition of the term 'specialized knowledge' for L-1 purposes.***" *Id*. (emphasis added). The OIG Report emphasized this point:

> While the current criteria for determining whether an alien is eligible for L-1B classification are not lax, ***given the 1990 amendment*** to the statute which effectively overruled INS's requirement that the alien's knowledge be proprietary, ***there is little room, absent new legislation, to further tighten the standards for L-1B classification***.

(App.506).

USCIS rejected this recommendation. (App.533). Instead, USCIS stated that it had taken its own "measures to clarify" the definition. *Id*. USCIS explained that it could tighten the definition by relying on a theory that the legislative history to the ***1970 Act*** continues to control the standard:

> There is no indication in the legislative history of the [1990 Act] to indicate that Congress intended to depart from its previous position [manifest in the 1970 Act legislative history] that the L-1B classification was for 'key employees' and that the number of

10

admissions under the L-1 classification 'will not be large' or that "the class of persons eligible for such nonimmigrant visas is narrowly drawn and will not be carefully regulated.

(App.529).  This 2005 statement to the OIG contradicted USCIS's own 1991 regulatory finding that the 1990 Act created a "more liberal" standard and the acknowledgement that the 1990 Act effectuated a "lesser" standard.  *See* 56 Fed. Reg. 31553, 31554 (July 11, 1991) (Add.-113); (App.42).  The OIG rejected this revisionist theory, and retained its recommendation that USCIS "seek clarification" from Congress if it wished to interpret specialized knowledge narrowly. (App.514).

### E.     USCIS Begins Denying Fogo's L-1B Petitions Without Explanation.

Despite approving 251 L-1B petitions on behalf of Fogo's *churrasqueiros* for nearly ten years, USCIS, without any change in the underlying statutory or regulatory framework, suddenly reversed course around 2006 and began to revoke and deny Fogo's L-1B petitions.  The denied petitions were based on essentially the same facts as those underlying the Service's 251 prior approvals.  (App.676).

One of these petitions that the Service denied was on behalf of Mr. Rones Gasparetto, which is the basis for this appeal.

## II.    THE GASPARETTO PETITION.

### A.    The Gasparetto Petition and VSC's Response.

Fogo filed its L-1B petition on behalf of Mr. Gasparetto on February 4, 2010 to USCIS's Vermont Services Center ("VSC").  (App.112-352).  This petition argued that Mr. Gasparetto possessed a cultural background that was uncommon and noteworthy in Brazil and distinguished by very unusual characteristics in the United States, that he had been screened and trained pursuant to company standards, that U.S. workers were not able to perform his job, and that his resulting knowledge was special and critical to Fogo's application of its product—an authentic gaucho culinary experience—in the U.S.  (App.128-29, 131-32, 134).

The petition included numerous exhibits,[3] and a support letter signed by Fogo's Chief Executive Officer, Mr. Lawrence Johnson.  (App.123-352).  There, Mr. Johnson stated: "Mr. Gasparetto successfully completed the training program, and has worked at the company in Brazil for approximately two years and eight

---

[3] The exhibits included (1) Mr. Gasparetto's paystubs from Fogo's Brazilian operations, (2) a letter from Fogo's CEO describing the two-year training program in Brazil and confirming Mr. Gasparetto's completion of the training program, (3) Fogo's training program manual and related documents, (4) expert opinions from (i) Gerald Hornbeck, (ii) Gregory P. Fatigati, and (iii) João Carlos Peixão Cortes d'Avila, describing how Fogo's *churrasqueiros* satisfy the specialized knowledge factors, (5) Fogo's corporate ownership documents in the U.S. and Brazil, (6) Fogo's financial and tax statements, (7) Fogo's company brochure and menu, (8) information about Rio Grande do Sul, (9) Brazilian population statistics, (10) a copy of Mr. Gasparetto's passport, and (10) organizational charts. (App.139-352).

months."  (App.129, 132).  Mr. Johnson also made clear that Mr. Gasparetto's

position in the Brazilian restaurants was as a *churrasqueiro*.  (*See* App.129) ("Fogo

de Chao must maintain strict adherence to . . . its business model by employing

authentic and fully trained Churrasqueiro Chefs, such as Mr. Gasparetto.").  Mr.

Johnson certified, under penalty of perjury, that the "petition and the evidence

submitted with it is all true and correct."  (App.115).

On February 9, 2010, the VSC responded with a Request for Evidence

("RFE") for organizational charts and other itemized information[4]—but *not*

additional evidence of Mr. Gasparetto's completion of the training program or his

foreign employment as a *churrasqueiro*.  (App.353-55).  Fogo provided the

requested evidence on May 5, 2010.  (App.356-88).

The VSC denied the Gasparetto petition on May 20, 2010.  (App.389-91).

The VSC reasoned that the *churrasqueiro* position does not involve specialized

knowledge.  (App.390).  Nowhere did the denial decision question Mr.

---

[4] Specifically, the RFE sought: (i) copies of Fogo's U.S. and Brazilian organization
charts, (ii) the number of persons holding the same or similar position as Mr.
Gasparetto at the US location where he would be employed, (iii) how Mr.
Gasparetto's duties "are different or unique from those of [Fogo's] other workers,"
(iv) explanation of the "product, technique, or service" in which Mr. Gasparetto
has specialized knowledge, (v) explanation of "how [Mr. Gasparetto's] training is
exclusive and significantly unique in comparison to that of others employed by the
petitioner of another person in this particular field," and (vi) how the inability to
obtain Mr. Gasparetto's services would impact Fogo's business.  The RFE also
erroneously requested a statement from Fogo's "clients" commenting on Mr.
Gasparetto's "contributions to the project to which he is assigned."  (App.354-55).

Gasparetto's completion of the training program or his employment as a

*churrasqueiro* in Brazil.  (App.389-91).

### B.    USCIS Announces that It Will Deny *All* Fogo *Churrasqueiro* L-1B Petitions.

Fogo filed a complaint in District Court challenging the denial on June 17,

2010.[5]  (*See* App.9).  Settlement discussions ensued, and Fogo sought referral of

the case to mediation.  Defendants strenuously opposed because

> [i]n view of USCIS's determination that <u>these individuals</u> do not
> qualify for L-1B 'specialized knowledge' visas and therefore that <u>such
> visa petitions will not be approved in the future</u>, the parties are at an
> impasse.

Defendants' Opposition to Plaintiff's Motion to Refer Case to Mediation (Oct. 28,

2010) (App.27) (emphasis added).

### C.    Criticism from USCIS Ombudsman.

In 2010, USCIS's Ombudsman issued a report criticizing a non-precedential

AAO L-1B decision known as *Matter of GST*, WAC-07-277-53214 (AAO July 22,

2008) (Add-226; 307).  According to the USCIS Ombudsman: "*GST* arguably

provides a higher standard for specialized knowledge than that found in the AFM

and the Puleo memorandum."  (Add.-226).  The Ombudsman observed that *GST*

"casts doubt upon the validity of longstanding agency guidance on L-1Bs set forth

---

[5] That same day, Fogo filed with the VSC a Motion for Reconsideration, which
Fogo later withdrew.

in the AFM and the Puleo Memo." *Id.* It recommended that USCIS only impose

such a change after a notice and comment rulemaking. *Id.* at 228.

### D.    USCIS's Administrative "Reopening."

After rejecting mediation, USCIS *sua sponte* administratively "reopened"

the VCS's May 20 denial decision over Fogo's objection, pursuant to 8 C.F.R.

§ 103.5(a)(5). (App.394). Following procedural motions, the parties reached a

compromise, allowing for the reopening to proceed based on a fixed timetable.[6]

Pursuant to the parties' agreement, the District Court stayed the litigation pending

the reopening and any subsequent AAO review.

### 1.    Fogo's Supplemental Evidence.

In response to the reopening, Fogo submitted additional evidence and a brief

supplementing the original Gasparetto petition. *See* 8 C.F.R § 103.5(a)(5)(ii);

(App.392-557).

Fogo's supplemental evidence included an affidavit by Fogo's CEO who

swore, based on his "personal knowledge," that Mr. Gasparetto "has well more

than two years' experience as a *churrasqueiro* in Fogo's Brazilian restaurants and

completed the training program in Brazil." (App.460-61). The CEO stated: "I

---

[6] Specifically, Fogo moved to enjoin the reopening on the grounds that USCIS
already had announced its predetermination to deny all of Fogo L-1B petitions, and
that USCIS was using this merely as a tactic to oppose mediation and to achieve a
litigation delay. Ultimately, when USCIS agreed to honor fixed time limits for the
reopening and any subsequent AAO review, Fogo agreed to withdraw its
injunction motion and its opposition to USCIS's stay motion. (*See* App.38-40).

15

review each visa application, and ultimately, I am responsive for approving the proposed transfer." (App.460). The CEO added that "[Mr. Gasparetto] is very well-regarded within Fogo for his high performance as a *churrasqueiro*." *Id.*

Fogo's supplemental evidence included Mr. Gasparetto's CV, which stated that he had "worked as a waiter churrasqueiro" since 2006 at two separate Fogo restaurants in Brazil, and that he "currently works at [Fogo's Sao Paolo restaurant], where he graduated and specialized as waiter churrasqueiro." (App.540-41). Further, Fogo submitted a letter from Maria Celia de Carvalho e Silva, a Brazilian nutritionist, stating that she had interviewed Mr. Gasparetto and had reviewed his CV, that she had reviewed the *churrasqueiro* job description and the expert reports previously submitted by Fogo, and concluded that Mr. Gasparetto "indeed possess[es] the cultural background and restaurant skills necessary to fulfill the position of Churrasqueiro at Fogo de Chao." (App.539, 542). Fogo also submitted a letter from Fogo's HR director in Brazil, Regina Maria Ramos Blau, who explained in support of Mr. Gasparetto's petition "the process for hiring churrasqueiros to work at Fogo de Chao in Brazil" and how "the Training Program for Churrasqueiros is considered the main strategy of Human Resources to develop the Fogo de Chao Brazil human potential." (App.543, 545).

16

## 2.    Fogo's Reopening Brief.

Fogo's reopening brief showed how Mr. Gasparetto satisfied the specialized knowledge definition:

- First, Mr. Gasparetto possessed "knowledge" of the authentic gaucho culinary experience that is the essence of Fogo's "products, service, . . . [and] techniques." *See* 8 C.F.R. § 214.2(l)(1)(ii)(D). Mr. Gasparetto gained this knowledge as a result of his experience in the gaucho culture in the small, rural town of Rondinha in the southern Brazilian province of Rio Grande do Sul, as confirmed by Fogo's Brazilian restaurants' strict recruiting process. (App.540, 438).

- Second, this knowledge is "special": As the Puleo Memo requires, this knowledge is "not generally known" and is "of some complexity"—and *cannot be transferred without "significant economic inconvenience"* to Fogo. Fogo's CEO Affidavit attested that Fogo is unable to teach its local-hires the seventeen *churrasqueiro* duties that Fogo's genuine gaucho transferees (like Mr. Gasparetto) can execute to 100% specification. (App.456-58).

- Mr. Gasparetto's completion of Fogo's training program—which details Fogo's corporate standards for the presentation and preparation of its *churrasco* product across the Americas—ensured his ability to

17

"appl[y]" his specialized knowledge in "international markets." *See* 8

C.F.R. § 214.2(1)(1)(ii)(D) (Add.-88); (App.460, 438).

- Fogo's strategy of using genuine Brazilian *churrasqueiros* to convey

    an authentic gaucho culinary experience has been successfully

    "applied in international markets," *id.*, as evidenced by its $168

    million in global revenues, of which the U.S. restaurants generated

    $122 million.  (App.453, 442).

This was the same argument that Fogo had made—and USCIS had approved—251

times.

### 3.     The VSC's "Reopened" Decision.

The VSC denied the petition on June 16, 2011.  (App.558-71).  Although the

opportunity to submit evidence was now closed,[7] the VSC claimed for the first

time in its reopening decision that the <u>initial evidence</u> was deficient with respect to

Mr. Gasparetto completing the training program, and his job title in Brazil: "Very

little evidence was submitted with the initial filing to establish the beneficiary's

qualification," referring only to Mr. Gasparetto's paystubs from Fogo in Brazil and

his passport:

> Aside from unsupported statements, petitioner submitted no evidence
> that [at Churrascarias Os Gauderios LTDA] . . . .beneficiary was

---

[7] The party to a Service motion to reopen has "30 days after service of the motion
to submit a brief," but no provision is made for submission of additional evidence.
*See* 8 C.F.R § 103.5(a)(5)(ii).

> employed in a *churrasqueiro* position. . . . [and] no evidence was submitted to establish that beneficiary has in fact completed the petitioner's training program . . . .

(App.563).  However, the VSC's reopened decision never alleged that the *supplemental* evidence was deficient as to training-program completion and Mr. Gasparetto's job title.  (App.559-71).  In fact, this decision is silent as to Fogo's key supplemental evidence:  the attestations in the CEO Affidavit that Mr. Gasparetto "completed the training program in Brazil," that Mr. Gasparetto "has well more than two years' experience as a *churrasqueiro* in Fogo's Brazilian restaurants," and that "he is very well-regarded within Fogo for his high performance as a *churrasqueiro*."  *Id*. (emphases added); (*see* App.460).  Nor did the VSC reopened decision reference the substantial evidence in the record regarding Mr. Gasparetto's completion of the training program.  *See supra* Part II(A), (D)(1).  Nor did the VSC reopening decision address key evidence, including Fogo's CEO affidavit, of how Mr. Gasparetto possessed skills that were "uncommon, noteworthy, or distinguished," as set forth by the Puleo Memo.  (*See* App.559-71; App.45).

The VSC certified its reopened decision to the AAO.  (App.558).  The certification notice stated that Fogo "may submit a brief or other written statement for consideration" by the AAO—but *did not* provide for submission of additional

evidence.  *Id*.  Fogo therefore submitted a brief to the AAO, but no further

evidence.  (App.572-624).

## III.    THE AAO'S DECISION.

On October 3, 2011, the AAO affirmed the reopened decision.  (App.625).

The AAO decision flatly declared:  "There is *no evidence* that the beneficiary

completed two years, or even 18 months, of training."  (App.665) (emphasis

added); (*see also* App.664 ("[Fogo] did not provide *any documentation* to confirm

the beneficiary's completion of such training for the record")).  Like the VSC

reopened decision, the AAO nowhere acknowledges that the CEO Affidavit attests

to Mr. Gasparetto's completion of the training program, the CEO's initial 2010

support statement, or Mr. Gasparetto's resume stating that he "graduated" from

Fogo's Sao Paolo restaurant.  *See supra* Part II(A), (D)(1).

Regarding Mr. Gasparetto's job title, the AAO decision stated that the record

"does not clearly document that . . . [Mr. Gasparetto's] training was followed by

one year of employment as a *churrasqueiro* chef in the foreign entity's

restaurants."  (App.665).  Similar to the VSC's reopened decision, the AAO

decision never acknowledges the CEO Affidavit's attestation that Mr. Gasparetto

worked as a *churrasqueiro* for more than two years at Fogo's Brazilian restaurants,

and that "[he] is very well-regarded as a *churrasqueiro*."  (App.460) (emphasis

added).  Nor does the AAO cite the initial CEO support statement attesting to Mr.

20

Gasparetto's employment as a *churrasqueiro*.  Further, despite acknowledging the conclusion in Ms. Silva's letter that Mr. Gasparetto "possesses the cultural background and restaurant skills necessary to fulfill the position of Churrasqueiro," (App.641), the AAO never considers this as evidence of Mr. Gasparetto's actual position in Brazil.  The AAO also:

- Claims that the 1970 Act legislative history "continues to support a restrictive view of specialized knowledge"—notwithstanding Congress's subsequent 1990 Act changes, (App.656);

- Rejects Fogo's claim that its local-hire *churrasqueiros* are unable to perform many of the functions that Fogo's genuine *churrasqueiros*, like Mr. Gasparetto, perform 100% to specification, (App.668-71), ignoring the CEO Affidavit on this point, (App.456-59, 462);

- Resurrects the "proprietary knowledge" test–invalidated by Congress in the 1990 Act—by requiring that Fogo show that it can "stake an ownership claim" in Mr. Gasparetto's special knowledge.  (App.663-64);

- Dismisses Fogo's 251 prior approvals between 1997 and 2006 as "material and gross error."  (App.677); and

- Neither acknowledges nor addresses the 2006 OIG Report or the 2010 Ombudsman Report.  (App.496).

21

## IV.    EVENTS LEADING TO THE DISTRICT COURT'S DECISION.

Following the AAO's decision, the District Court lifted its stay, and the parties submitted cross-motions for summary judgment.  The final brief was filed on May 11, 2012.  (App.52).

Fourteen months passed.  On July 24, 2013, Fogo filed a Motion for Preliminary Injunction to preserve the immigration status of five *churrasqueiros* whose work authorizations were to expire beginning on August 9, 2013.  (App.83).  The District Court never ruled on the preliminary injunction motion.  Rather, on August 9, 2013, the Court issued its summary judgment decision.  (App.85).

## V.    THE DISTRICT COURT'S SUMMARY JUDGMENT DECISION.

The District Court granted Defendants' motion for summary judgment and held that the AAO's denial of the Gasparetto Petition was neither arbitrary nor capricious.  The Court stated, "[T]he essential problem with the Gasparetto Petition was one of insufficient evidence"—specifically, of Mr. Gasparetto's completion of the training program, and lack of clarity as to the nature of Mr. Gasparetto's position in Brazil.  (App.90, 109).  From that mistaken factual premise, the Court proceeded to dismiss—as harmless error—most of Fogo's remaining legal challenges to USCIS's unexplained departure from precedent, *id.* at 102-103, 108-109, 111, relying on five key points:

1.      <u>Training Program</u>.  The District Court supplied a *post-hoc*

rationalization for the AAO's erroneous contention that Fogo

provided no evidence of Mr. Gasparetto's completion of the training

program, relying on an inapplicable "corroboration" standard to hold

that Fogo's affidavit evidence could be discounted.  (*See* App.110).

2.      <u>Foreign Title</u>.  The District Court accepted the AAO's argument that

an ambiguous translation of Mr. Gasparetto's foreign job title could

supersede substantial evidence that his job duties contained

specialized knowledge, despite case law to the contrary.  *Id*. at 90,

111.

3.      <u>Harmless Error</u>.  The District Court relied on its mistaken analysis of

Fogo's key evidence to dismiss as "harmless error" the significant

INA and APA violations that Fogo identified.  *Id*. at 102-03, 108-09,

111.

4.      <u>Opportunity to Respond</u>.  The District Court misunderstood the

procedural posture of the AAO decision, contending that Fogo had an

opportunity to respond to USCIS's concern about insufficient

evidence, despite regulations precluding submission of evidence at

the time USCIS alleged the deficiency.  *Id*. at 89 ("The [AAO]

considered . . . additional evidence [Fogo] submitted directly to the [AAO].").

5.  Deference.  The Court relied on inapplicable authority to find that USCIS's interpretation of "specialized knowledge" was entitled to *Chevron* deference.  Citing inapplicable authority, the Court ignored Fogo's argument (and the Government's concession) that *Chevron* deference was inapplicable because the AAO decisions in question were all non-precedential.  *Id*. at 100, 106.

## SUMMARY OF ARGUMENT

USCIS based its denial decision on a purported lack of evidence that was clearly present in the record and, as such, engaged in an arbitrary and capricious adjudication.  The District Court sustained this evidentiary finding by imposing a corroboration requirement not found in the law and by engaging in prohibited *post-hoc* rationalization.  USCIS further relied on an unexplained departure from its regulatory precedent to reject a visa petition similar to those it had previously approved on 251 occasions and, therefore, acted contrary to the APA.  All of these actions merit reversal of USCIS's decision.

## STANDING

To establish standing under Article III, Section 2 of the U.S. Constitution, Fogo must show that (a) it has suffered a "concrete and particularized, and actual

24

or imminent" "injury in fact"; (b) there is "a causal connection between the injury and the conducted complained of"; and (c) the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). When suing under the APA, plaintiffs must also show that they are "within the zone of interests to be protected by the statute in question." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2210 (2012).

Fogo has standing because: (a) the AAO's L-1B denial caused concrete and particularized injury to Fogo's U.S. business strategy; (b) the AAO's denial occurred because of its unexplained departure from precedent, erroneous interpretation of the L-1B regulations, and arbitrary and capricious disregard of substantial evidence submitted by Fogo; and (c) reversal of the AAO decision would result in an approval of Fogo's L-1B petition for Mr. Gasparetto. *See Lujan*, 504 U.S. at 561. Further, since Fogo had its L-1B petition denied, has previously obtained L-1B status for 251 of its *churrasqueiros*, and relies on the L-1B category for its U.S. operations, there is no question that Fogo is within the zone of interests protected by the INA. *See Patchak*, 132 S. Ct. at 2210.

## ARGUMENT

## I.     STANDARD OF REVIEW.

This Court reviews the District Court's summary judgment decision "*de novo*, "applying the familiar APA standard, which requires [it] to set aside agency

action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A)." *See Jicarilla Apache Nation v. Dep't of Interior*, 613 F.3d 1112, 1118 (D.C. Cir. 2012).

## II. THE AAO ENGAGED IN ARBITRARY AND CAPRICIOUS CONDUCT BY IGNORING EVIDENCE OF MR. GASPARETTO'S L-1B ELIGIBILITY, AND THE DISTRICT COURT'S *POST-HOC* RATIONALIZATION OF THE AAO'S DECISION MUST BE REJECTED.

USCIS denied Mr. Gasparetto's L-1B petition because Fogo allegedly submitted no evidence to show that Mr. Gasparetto completed Fogo's training program. The AAO's finding is contradicted by substantial evidence in the administrative record. The District Court acknowledged that such training-program evidence existed, but improperly discounted its value by imposing a "corroboration" test that is contrary to law. As such, there is no factual or legal basis for the alleged evidentiary deficiencies upon which the AAO and District Court relied, and the District Court's ruling must be reversed.

### A. The AAO Acted Arbitrarily and Capriciously by Disregarding Evidence in the Record.

#### 1. Fogo Provided Definitive Evidence of Mr. Gasparetto's Completion of the Training Program.

In Fogo's initial L-1B petition, the CEO (Mr. Johnson) repeatedly stated, "[t]he company has trained Mr. Gasparetto to the company's high standards at its training and development program in Brazil. . . . Mr. Gasparetto successfully

completed the training program, and has worked at the company in Brazil for

approximately two years and eight months," referring USCIS to extensive details

on the training program Mr. Gasparetto completed.  (App.128-29) ("Fogo de Chao

must maintain strict adherence to the original Southern Brazilian Churrascaria

traditions and culture of its food preparation, production and presentation, and its

business model by employing authentic and <u>fully trained Churrasqueiro Chefs,</u>

<u>such as Mr. Gasparetto</u>."); (App.123) ("Mr. Gasparetto . . . has a highly developed

level of knowledge of the Fogo de Chao business concept, and the company's

methods and procedures for consistently creating the experience that its brand

represents in the marketplace <u>as a result of his successful completion of the Fogo</u>

<u>de Chao training program and his years of experience</u>.") (emphases added).

        In the reopening petition, CEO Larry Johnson again attested (this time in his

affidavit), that "Rones Gasparetto . . . completed the training program in Brazil."

(App.430 ¶17).  He noted specifically:  "The Director of Operations and the

Director of Human Resources, both in Brazil, screen these candidates, and an

immigration specialist at Fogo verifies that the candidate has the requisite visa

qualifications."  *Id*. ¶16.

        Mr. Gasparetto's resume noted his "graduation" (i.e., from the training

program) and employment at Fogo's restaurant in Sao Paulo, Brazil.  (App.541).

Brazilian culinary expert Maria Celia de Carvalho e Silva stated that she

interviewed Mr. Gasparetto in person and confirmed that he "possesses the cultural background and restaurant skills necessary to fulfill the position of Churrasqueiro at Fogo de Chao." (App.542-43). Fogo Brazil HR Consultant Regina Maria Ramos Blau provided information regarding the training program completed by Mr. Gasparetto in Brazil. (App.539). Fogo more than satisfied its burden, by a preponderance of the evidence, that Mr. Gasparetto qualified for the *churrasqueiro* role because he completed the company training program. *See Concrete Pipe & Prods. of Cal.*, *Inc. v. Constr. Laborers Pension Trust for So. Cal.*, 508 U.S. 602, 622 (1993) (to establish fact by preponderance of the evidence, factfinder must "believe that the existence of a fact is more probable than its nonexistence").

### 2. Agency Disregard of Record Evidence Is Arbitrary and Capricious Conduct and Violates the Substantial Evidence Rule.

A court reviewing an agency decision in an informal adjudication such as this "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . .arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). The APA further requires that: "In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." *Id.*

28

An agency acts arbitrarily or capriciously when it "entirely failed to consider an important aspect of the problem" or "offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). A reviewing court must be satisfied that the agency has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Alpharma*, *Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006). "[A]n agency's refusal to consider evidence bearing on the issue before it constitutes arbitrary agency action within the meaning of § 706." *Butte County v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) (applied in informal adjudication before Department of Interior). *See also Comcast Corp. v. FCC*, 579 F.3d 1, 8 (D.C. Cir. 2009).[8]

In addition to violating APA Section 706, an agency's failure to consider material information before it may constitute a Section 555(e) violation, in that a decision ignoring or contradicting key evidence in the record does not satisfy that section's requirement of a "brief statement of the grounds for denial" because there is no evidence the determination was the product of "reasoned decision-making."

---

[8] This Court in *Butte County* noted, "This proposition may be deduced from case law applying the substantial evidence test, under which an agency cannot ignore evidence contradicting its position." *Id*. It further observed, "in their application to the requirement of factual support the substantial evidence test and the arbitrary or capricious test are one and the same." *Ass'n of Data Processing Serv. Orgs.*, *Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 683 (D.C. Cir. 1984).

*Butte County*, 613 F.3d at 194. One key aspect of the "reasoned decision-making" requirement is that an agency explain how it proceeded from its findings to the action it takes. *See Tenneco Gas v. FERC*, 969 F.2d 1187 (D.C. Cir. 1992) (agencies must engage in "reasoned decision making by supporting conclusions with substantial evidence"); *State Farm*, 463 U.S. at 43 (requiring a "rational connection between the facts found and the choice made").

### 3. The AAO's Failure to Consider Fogo's Documentary Evidence Was Arbitrary and Capricious.

The AAO decision disregarded evidence in Fogo's initial support letter, Fogo's CEO's Affidavit, Mr. Gasparetto's resume, Ms. Silva's letter, and Ms. Blau's report when finding, "[Fogo] did not provide any documentation to confirm the beneficiary's completion of such training for the record. Without documentary evidence to support the claim, the assertions of counsel will not satisfy the petitioner's burden of proof." (App.664). The AAO engaged in no reasoned analysis requiring expertise in immigration law–the AAO's factual finding simply required an objective determination of whether certain evidence existed in the record, or not. The AAO's mistaken assertion that Fogo was "[g]oing on record without supporting documentary evidence," *id.*, demonstrates that it clearly "refused to consider evidence bearing on the issue before it," *see Butte County*, 613 F.3d at 194; *State Farm*, 463 U.S. at 43. Such disregard for "the relevant data" constitutes arbitrary and capricious agency action. *See Leavitt*, 460 F.3d at 6. As

such, APA Section 706 requires that the AAO's finding on this point be "set aside."

Applying the alternative but equivalent "substantial evidence" test, the result is the same.  Agency findings of fact must be "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Leia v. Ashcroft*, 393 F.3d 427, 432 (3d Cir. 2005).  The AAO's finding that Fogo provided no evidence of training-program completion is not supported by substantial evidence.  Such a conclusion evidences that the AAO "ignore[d] evidence contradicting its position."  *See Butte County*, 613 F.3d at 614.  In fact, "the record considered as a whole" contains the five documents described above that address Mr. Gasparetto's training-program completion.  As such, substantial evidence does not exist to support the AAO's claim that Fogo failed to submit any evidence to meet its burden of proof on Mr. Gasparetto's training-program completion, and the AAO's decision on this point must be overturned.

To the extent that the AAO relied on an ambiguity in Mr. Gasparetto's job title to decide his L-1B eligibility, that rationale is flawed.  (App.665).  Under the INA, the nature of the services performed—not the alien's job title—guides the Service's review of specialized knowledge eligibility.  *See* INA § 101(a)(15)(L), § 214(c)(3).  The L-1B regulations at 8 C.F.R. § 214.2(l)(1)(ii)(D) and 8 C.F.R. § 214.2(l)(3)(ii) require employers to submit evidence "including a detailed

31

description of the services to be performed." (Add.-88, 90). The question of whether an employee maintains specialized knowledge turns on the job duties to be performed, not job titles. (*See*, *e.g.*, 9 FAM 41.54 N.7.2-2 (Add.-389)). The federal courts have consistently reviewed visa eligibility based on a beneficiary's job duties. *See*, *e.g.*, *1756*, *Inc. v. Att'y Gen. of U.S.*, 745 F. Supp. 9, 17 (D.D.C. 1190) (evaluating beneficiary's "techniques and the abilities"); *Republic of Transkei v. INS*, 923 F.2d 175 (D.C. Cir. 1991) (reviewing Consul General's "duties" to determine eligibility). The specialized knowledge nature of Mr. Gasparetto's job duties control, and those duties are well-documented in the record. Tangential evidence regarding a job title cannot trump the substantial evidence in the record, and it was error for the District Court to find otherwise.

### B. Affidavit Evidence Need Not Be Corroborated, and Requiring Otherwise Was Prejudicial Error.

The District Court acknowledged evidence of training-program completion but discounted the CEO affidavit because it was not corroborated. The court then upheld the AAO's evidentiary ruling under this *post-hoc*, alternative theory, relying on inapplicable authority for the corroboration requirement. Rather, the weight of authority supports the opposite conclusion. As such, the AAO's finding that Mr. Gasparetto did not complete Fogo's training program remains arbitrary and capricious, requiring this Court to set that finding aside.

32

### 1.     The District Court Relied on Inapplicable Authority to Discount Fogo's Evidence.

The District Court stated:

> And as the defendants note, while the [AAO] "does not disregard evidence because it is 'self-serving,' it <u>requires</u> the introduction of corroborative testimonial and documentary evidence, where available." Defs.' Reply at 23 (emphasis in original) (citing *Matter of S-A-*, 22 I. & N. Dec. 1328, 1332 (June 27, 2000); AR at 47 n.8) (emphasis in original).

App.110.  *Matter of S-A-* was the only authority cited by the District Court for its

corroboration requirement, but this decision by the BIA does not stand for the

proposition for which it was cited.  In *Matter of S-A-*, the BIA reversed an

Immigration Judge's denial of asylum to an applicant based on an adverse

credibility determination with regard to the applicant.  The Immigration Judge also

discounted corroborating testimony supplied by the applicant's aunt, whose

testimony the Immigration Judge found to be "mere embellishment of the

respondent's claim."  22 I.&N. at 1332.  The BIA disagreed with the Judge's

adverse credibility determination and also found the aunt's corroborating testimony

to be "legitimate."  *Id.*  The BIA then provided the authority on which the District

Court relied:

> We not only encourage, but require the introduction of corroborative testimonial and documentary evidence, where available.  *See Murphy v. INS*, 54 F.3d 605, 6011 (9th Cir. 1995) (holding that "[t]estimony

should not be disregarded merely because it is . . . in the individual's own interest").

22 I.&N. at 1332.

Taken in its proper context, the quoted text from *Matter of S-A-* stands only as an instruction to immigration judges that corroborative testimony or other evidence, *where available*, should not be dismissed merely because it is in an individual's own interest. There is simply no basis, however, for the District Court's contorting *Matter of S-A-* from an inclusionary rule of evidence into an exclusionary one. Such a rule would prevent agency consideration of an affidavit, a wholly absurd result. Those words, and that rationale, simply cannot be found in *Matter of S-A-*.

Further, the District Court failed to take into account the "where available" qualifying language when construing *Matter of S-A-* to require "corroboration." The "where available" language limits any alleged corroboration requirement to the occasions where such evidence is available. *See id.*

The appropriate authority on corroboration is *Matter of Mogharrabi*, 19 I.&N. Dec. 439 (BIA 1987). There, the BIA held that an alien's own testimony in an asylum case can suffice, without corroborative evidence, to prove a well-founded fear of persecution "where the testimony is believable, consistent, and sufficiently detailed." *Id.* at 445. *See also Matter of Skirball*, 25 I. & N. Dec. 799 (BIA 2012) (overturning USCIS's denial of P-3 visa because petitioner's

34

"uncontroverted testimony [was] reliable, relevant, and probative as to the specific facts in issue").

Indeed, USCIS's regulations confirm that *Mogharrabi* and *Skirball* are the applicable authority. Given that a multinational company must submit "evidence. . . that the alien's prior education, training, and employment qualifies him/her to perform the intended services in the United States," 8 C.F.R. § 214.2(l)(3)(iv), it would be unreasonable to impair an employer's ability to submit an affidavit describing how the alien qualifies for the U.S. position. Thus, because *Matter of S-A-* cannot be relied on for the purpose cited by the District Court, the corroboration requirement should be rejected.

### 2.    Uncorroborated Affidavit Evidence Alone Is Valid in this Proceeding.

This Court and others have held that affidavit evidence alone in a visa petition adjudication is sufficient evidence to sustain a factual assertion or finding.

In *Murphy v. INS*, 54 F.3d 605, 611 (9th Cir. 1995), on which *Matter of S-A-* relies, the court overturned a finding of deportability where the citizenship of the respondent was in dispute. Mr. Murphy contended that he was born at home in St. Thomas, U.S. Virgin Islands, was therefore a U.S. citizen, and testified to that effect. *Id.* at 607. The INS relied on hearsay evidence to claim that he was born in St. Thomas, Jamaica, noting that an inquiry with the Virgin Islands authorities resulted in no record of Mr. Murphy's birth. The INS disputed Mr. Murphy's

testimony, and although the Immigration Judge found him credible, deportation was ordered because there was no documentary corroboration of Mr. Murphy's testimony. *Id.* at 607-08. The BIA affirmed, sustaining the Immigration Judge on Mr. Murphy's failure to corroborate his testimony. *Id.* at 608.

The Ninth Circuit reversed. "Testimony should not be disregarded merely because it is uncorroborated and in the individual's own interest." *Id.* at 611 (citing *Cho v. INS*, 669 F.2d 936, 940 n.6 (4th Cir. 1982) (finding "[n]or must every witness be corroborated before his testimony can be accepted if he is otherwise found to be credible.").

This Court has upheld findings of fact based solely on "uncorroborated and untested . . . hearsay testimony" when it bears "satisfactory indicia of reliability." *See*, *e.g.*, *Echostar Comm. Corp. v. FEC*, 292 F.3d 749, 53 (D.C. Cir. 2002). In *Echostar*, the court rejected petitioner's claim that an uncorroborated statement upon which the agency relied could not constitute substantial evidence where the statement was given under oath, the affiant had personal knowledge of the facts, and the petitioner submitted no contradictory evidence. *Id.* at 752-53; *see also Lacson v. DHS*, 726 F.3d 170, 178 (D.C. Cir. 2013) (uncorroborated hearsay statements may also constitute "substantial evidence" if "reliable and trustworthy"); *Honeywell Int'l*, *Inc. v. EPA*, 372 F.3d 441, 447 (D.C. Cir. 2004)

36

(hearsay and other uncorroborated statements acceptable if made "by parties who were uniquely in a position to know the [relevant information]").

The legal authority is clear. There is no *per se* corroboration requirement of the kind imposed by the District Court, and this conclusion must be rejected.

Even if this Court finds the District Court's corroborating evidence standard appropriate, there is no basis in the record for the District Court to assert that "Fogo failed to provide any other corroborative evidence." (App.26). As explained in detail in Part II(A)(1), *supra*, Fogo provided at least five key pieces of evidence establishing Mr. Gasparetto's training-program completion. By failing to take this additional evidence into consideration, the District Court failed to "review the whole record or those parts of it cited by [Fogo]." 5 U.S.C. § 706. The District Court's failure was prejudicial to Fogo, as it was the foundation of the District Court's affirming the AAO denial of Fogo's L-1B petition. (*See* App.109). As such, the District Court committed error when reviewing the AAO decision pursuant to APA Section 706, such error was prejudicial to Fogo, and this Court should reverse the District Court's decision.[9]

---

[9] The AAO also erred in claiming that Fogo did not provide "any corroborating evidence" on the issue of its local-hire *churrasqueiros* being unable to perform many of the functions that Fogo's genuine gaucho *churrasqueiros*, like Mr. Gasparetto, perform 100% to specification, (App.68-71). The AAO ignored the affidavit of Fogo's CEO on this point, (App.455-59, 462), as well as the expert evidence supporting this point. (*See*, *e.g.*, App.471).

### C.     The District Court Engaged in Prohibited *Post-Hoc* Rationalization of the AAO's Finding that No Evidence of Training-Program Completion Existed.

The District Court also erred by sustaining the AAO decision based on a *post-hoc* rationalization supplied by Defendants' counsel, which is prohibited by the applicable law.  The District Court held:  "[A]lthough Fogo is correct that there was no evidence contradicting the CEO's affidavit, it cannot be said that the agency's decision was arbitrary and capricious where Fogo failed to provide any other corroborative evidence."  App.110.  (emphasis added) (internal quotations and citations omitted).

But this conclusion was not the basis of the AAO's evidentiary decision. Rather, the AAO's actual grounds were simply that "*[t]here is no evidence*" that Mr. Gasparetto completed the training.  (App.665) (emphasis added).  (*See* App.665 ("[Fogo] did not provide any documentation" on this point"); App.678 (same)).  The AAO decision manifests a mistaken belief that: "[Fogo] did not provide any documentation to confirm the beneficiary's completion of such training for the record.  Without documentary evidence to support the claim, <u>the assertions of counsel will not satisfy the petitioner's burden of proof</u>."  (App.664) (emphasis added).  *But see supra* Part II(A) (discussing at least five pieces of evidence contradicting AAO's finding).

The District Court's reliance on this *post-hoc* rationalization contravenes well-established precedent.  As the Supreme Court has explained,

> [W]e emphasize[] a simple but fundamental rule of administrative law.  That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, <u>must judge the propriety of such action solely by the grounds invoked by the agency</u>.  If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.

*SEC v. Chenery Corp*., 332 U.S. 194, 196 (1947) (emphasis added); *FPC v. Texaco Inc*., 417 U.S. 380, 397 (1974) ("[W]e cannot accept appellate counsels['] *post hoc* rationalizations for agency action; for an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself.") (internal quotation omitted).  *See also Lacson v Dep't. of Homeland Sec.*, 726 F. 3d 170, 177 (D.C. Cir. 2013) ("[W]e can sustain an agency action only on a ground upon which the agency itself relied . . . ."); *Alpharma*, *Inc. v. Leavitt*, 460 F.3d 1,6 (DC Cir. 2006) (same).

The Ninth Circuit has applied this rule to dismiss *post-hoc* rationalizations in the immigration context, stating that the court "cannot affirm the BIA on a ground upon which it did not rely [b]ecause this court's review is confined to the BIA's decision and the bases on which the BIA relied[.  W]e cannot affirm the BIA's decision by concluding that [petitioner's] testimony is too sparse when there is not

suggestion of any such finding in the agency's decision." *Navas v. INS*, 217 F. 3d

646, 658 n.16 (9th Cir. 2000) (internal quotations and citations omitted).

Similarly, in *Evangelical Lutheran Church of America v. INS*, 228 F. Supp.

2d 23, 47-48 n. 9 (D.D.C. 2003), the court overturned the agency's denial of an H-

1B extension petition that was filed late "[b]ecause the court [was unable to]

discern the path that led to the INS's decision," reasoning that a "court must base

its decision on the grounds articulated by the agency at the time of the decision."

*See also New Life Evangelistic Cntr. v. Sebelius*, 753 F. Supp. 2d 103 (D.D.C.

2010) (*post-hoc* rationalizations may not "substitute for an agency's obligation to

articulate a valid rationale in the first instance" (citing *El Rio Santa Cruz*

*Neighborhood Health Cntr.*, *Inc. v. Dep't of Health & Human Servs.*, 396 F.3d

1265, 1276 (D.C. Cir. 2005)); *World Wildlife Fund v. Hodel*, 1988 WL 66193, at

*2 (D.D.C. June 17, 1988) (same); *Pub. Citizen v. Heckler*, 653 F. Supp. 1229,

1241 n.11 (D.D.C. 1986) (same).

The District Court's "corroboration of evidence" argument is mere *post-hoc*

rationalization, is prohibited by the applicable law, and cannot undermine the

substantial and probative  evidence submitted by Fogo on Mr. Gasparetto's

completion of the training program.

40

**D.      The AAO's Evidentiary Failure Resulted in Prejudice to Fogo.**

Finally, the AAO relied on its arbitrary finding that Fogo failed to provide required evidence in concluding that Fogo had not met its burden of proof.  The agency's fact-finding failure clearly resulted in "prejudicial error" to Fogo because had the AAO properly considered the evidence of Mr. Gasparetto's completion of the training program, the petition would have been approvable.

APA Section 706 directs a reviewing court to give "due account . . . of the rule of prejudicial error."  The D.C. Circuit has explained that though applicable, "the doctrine under which appellate courts ignore harmless error may not insulate officials or agencies to the same extent that it will trial judges." *Unification Church v. Att'y Gen. for U.S.*, 581 F.2d 870, 873 (D.C. Cir. 1978).  "[T]he harmless error rule is '*not . . . a particularly onerous requirement*,' and the Supreme Court has cautioned courts applying the rule against 'us[ing] mandatory presumptions and rigid rules rather than case-specific application of judgment, based upon examination of the record.'  If prejudice is obvious to the court, then a party challenging agency action need not demonstrate anything further." *Jicarilla Apache Nation*, 613 F.3d at 1121 (quoting *Shinseki v. Sanders*, 129 S. Ct. 1696, 1704-05 (2009)).  If the agency's mistake affected the outcome of the case, the court should vacate and remand for reconsideration.  *See PDK Labs*, *Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004).

41

Here, the AAO's mistaken factual finding enabled it to reject the Gasparetto petition for failure to meet an evidentiary burden of proof. (*See* App.678). The District Court itself confirmed that allegedly insufficient evidence was the "essential problem." (*See* App.109). In light of the AAO's reliance on this finding to deny Fogo's L-1B petition, it is "obvious" that Fogo was prejudiced by this erroneous determination. *See Jicarilla Apache Nation*, 613 F.3d at 1121.

### E.     Fogo Satisfied Its Burden of Proof by a Preponderance of the Evidence.

Once this factual finding is set aside, the proper remedy is to reverse the AAO decision and remand for consideration of all of Fogo's evidence on Mr. Gasparetto's qualification for L-1B status, *see PDK Labs*, *Inc.*, 362 F.3d at 799, because Fogo established, by a preponderance of the evidence, with the following relevant, probative, and credible evidence, that Mr. Gasparetto possessed "specialized knowledge.

- Fogo's recruitment processes determined that Mr. Gasparetto grew up in an uncommon traditional gaucho environment. (App.454, 456, 539-45).

- Mr. Gasparetto was hired by Fogo in Brazil, progressed through its initial "probation" period, and completed Fogo's formal training program and on-the-job training, gaining specialized knowledge of how Fogo's specific methods and techniques for conveying authentic

42

gaucho culinary traditions are "applied in international markets," an uncommon experience distinguishing Mr. Gasparetto from other *churrasqueiros* across the globe. *See* 8 C.F.R. § 214.2(l)(1)(ii)(D); (App.129, 460, 522-26).

- Fogo found that he satisfied the *churrasqueiro* position requirements and offered him a *churrasqueiro* position in the U.S., in effect finding his skills to be noteworthy. (App.664).

- After analyzing the U.S. position that Mr. Gasparetto was selected for, a U.S. restaurant industry expert, Gerald Hornbeck, determined that Fogo's *churrasqueiros* possess uncommon and noteworthy cooking, serving, and related culinary skills distinguished by unusual qualities not generally known by others in the industry, based on his first-hand observations of Fogo's operations and *those of its closest competitors*. (App.303-11).

- Fogo's CEO attested that a *churrasqueiro's* duties consisted of seventeen unusual or *nonexistent* skills and that despite attempting to train them, U.S. workers could only perform a fraction of these skills to Fogo's satisfaction, evidencing that the skills are unavailable in the U.S. restaurant industry. (App.455-59, 462). Finally, U.S. culinary academic expert, Gregory Fatigati, reviewed the actions of Fogo's

43

U.S. *churrasqueiros* and observed that the skills required were
unusual and not taught at U.S. culinary schools, confirming their
unavailability in the U.S.  (*See* App.313-17; App.45).

The AAO rejected this evidence by relying on an invalid argument that
specialized knowledge "has no cultural component."  (App.663).  The AAO cites
no authority for this conclusion.  Rather, it quotes the regulatory definition of
"specialized knowledge" and emphasizes that the definition requires "special
knowledge possessed by an individual *of the petitioning organization's* product,
[or] service."  (App.663).

This argument is circular.  Fogo's "product or service" is the provision of an
authentic gaucho culinary experience.  Its business model relies on transferring
*churrasqueiros*, trained by and who have worked for Fogo in Brazil, to other
jurisdictions to provide its "product or service" in international markets.  Fogo's L-
1B petitions thus are consistent with the regulation's requirement that the
knowledge in question be "of the petitioning organization's product."  *See* 5 U.S.C.
§ 706.  This may have been permissible under the 1988 INS "Norton Memo."  (*See*
Add.-387 (requiring knowledge that "can be gained only through extensive prior
experience with the employer.") (emphasis added)).  But, that requirement was
rescinded by Congress in 1990, does not reappear in the 1994 Puleo Memo, and
may not be relied upon by USCIS today.

44

The AAO claims: "The petitioner cannot effectively *stake an ownership claim* on the 19th Century gaucho culture of the pampas region of the Brazilian state of Rio Grande do Sul." (App.664) (emphasis added). Yet, that is precisely the sort of "proprietary knowledge" requirement present in the 1987 INS regulation that Congress specifically overrode in the 1990 Act. *See* 52 Fed. Reg. 5738, 5752 (Feb. 26, 1987) (Add.-107); Pub. L. No. 101-649 (Add.-8).

Webster's Dictionary provides the following definition of "proprietary": "of, relating to, or characteristic of an owner or title holder." MERRIAM-WEBSTER 2014, *available at* http://www.merriam-webster.com/dictionary/proprietary (last updated Jan. 30, 2014). As ownership is a core feature of "proprietary," USCIS cannot contend that its requirement that Fogo show an "ownership stake" in Mr. Gasparetto's knowledge does not amount to requiring the type of "proprietary knowledge" that Congress banned in the 1990 Act. The two concepts are equivalent, and both are forbidden by Congress.

USCIS relied on rescinded standards of "knowledge" in finding that Fogo's *churrasqueiros* lacked specialized knowledge. Fogo has shown that Mr. Gasparetto is more likely than not to possess specialized knowledge and requests that the District Court's decision be reversed.

## III.  FOGO ADVANCED LEGAL GROUNDS FOR REVERSAL OF THE AAO DECISION.

### A.  USCIS Violated the APA By Departing from Precedent Without Notice and Comment Rulemaking.

Fogo submitted substantial legal authority confirming that USCIS violated the APA when it:  (i) ceased adhering, without explanation, to its 1991 regulations, 1994 Puleo Memo, and 2004 Ohata Memo; and (ii) implemented a uniformly narrower interpretation of "specialized knowledge" without providing notice and an opportunity to comment on this change.  The District Court contended that the USCIS adjudication was in fact consistent with the Puleo and Ohata Memos, but failed to address key DHS policy documents that found otherwise—the 2006 OIG Report and the 2010 USCIS Ombudsman Report.  As such, the District Court decision is critically flawed.

### 1.  The APA Prohibits Agencies from Changing Regulatory Precedent Without Explanation.

In *Honeywell*, this Court found that the Nuclear Regulatory Agency violated the APA when it granted, on two separate occasions, exemptions from the requirement that licensees have a certain tangible net worth, but then denied the third exemption request without a reasonable explanation.  628 F.3d at 578-581.  Similarly, in *Hatch v. FERC*, the FERC's denial of petitioner's application to hold an interlocking directorship violated the APA because the Commission departed from 40 years of precedent by imposing a new legal standard of proof without

46

providing a *reasoned* explanation for this change.  654 F.2d 825, 833-35 (D.C. Cir.

1981).  The FERC decision "contained no announcement or explanation that the

Commission was progressing to a new standard of proof."  *Id.* at 833.  Instead,

FERC "disingenuously" characterized the change in standard as merely a

clarification, *id.*, and "undermine[d] the integrity of the administrative process," *id.*

at 834-35.

When "an agency departs from precedent without a reasoned explanation, its

decision will be vacated as arbitrary and capricious."  *ANR Pipeline Co. v. FERC*,

71 F.3d 897, 901 (D.C. Cir. 1995).  This Court has stated that "an agency's

decision to reverse its position in the face of a precedent it has not persuasively

distinguished is quintessentially arbitrary and capricious."  *La. Pub. Serv. Comm'n

v. FERC*, 184 F.3d 892, 897 (D.C. Cir. 1999).

The district courts in this Circuit also have followed this reasoning.  In *Fund

for Animals v. Norton*, the court found that the National Park Service failed

adequately to explain its sudden reversal of its policy regarding use of

snowmobiles in parks, so the decision codifying that change constituted arbitrary

and capricious conduct.  294 F. Supp. 2d 92, 108 (D.D.C. 2003).  Similarly, in

*Brady Campaign to Prevent Gun Violence v. Salazar*, the court found that the

Department of Interior failed adequately to explain its sudden reversal of its 25-

year old ban on firearms in national parks.  612 F. Supp. 2d 1, 18-19 (D.D.C.

47

2009). "This change of course without a reasoned explanation is the quintessential example of an arbitrary and capricious action." *Id.* at 19.

Here, there is no question that USCIS has departed from precedent. Prior to 2007, USCIS granted 251 Fogo L-1B petitions for *churrasqueiros* over a nine-year period. After the departure from precedent, USCIS stopped granting Fogo's L-1B petitions in all instances–period–and declared that it would decline to approve L-1B petitions for Fogo's *churrasqueiros* in the future. (App.27).

When confronted with this fact, the AAO dismissed its nine-year practice of approving Fogo's L-1B petitions as "error." (*See* App.677). This blithe explanation flies in the face of *La. Pub. Serv. Comm'n*, which requires an agency to "persuasively distinguish" its "decision to reverse its position in the face of a precedent." 184 F.3d at 897. Stating that 251 prior approvals "may have been erroneous" is hardly persuasive. Nor is there any "reasoning" in the AAO's explanation of why the prior course of adjudication had such different results, as required by *ANR Pipeline*, 71 F.3d at 901. The AAO Decision plainly flunks these standards outright.

In the alternative, the AAO takes the even less credible position that it has not changed its course of adjudication. Rather, it argues that: (i) legislative history from a 1970 House Committee Report remains valid, and (ii) the 1990 Act did not change anything. (App.654-57). This argument is not credible. The 1991 INS

regulations acknowledged that the 1990 Act liberalized the specialized knowledge definition. *See* 56 Fed. Reg. 31553, 31554 (July 11, 1991) (Add.-113). The 1994 Puleo Memo acknowledged that the 1990 Act created a "lesser" standard than previously existed for specialized knowledge. (*See* App.42). The 2006 OIG Report instructed USCIS that it could not narrow the scope of the L-1B visa category without authority from Congress. (App.506-07). And the 2010 USCIS Ombudsman Report found that non-precedential AAO decisions narrowing the L-1B category had departed from precedent and were not consistent with APA principles. (Add.-226, 228). The AAO's rationale thus is reminiscent of FERC's claim in *Hatch* that its change in standard was a clarification. *See* 654 F.2d at 835-35. The *Hatch* court found this assertion to be "disingenuous," and a similar finding is compelled by the AAO's decision here.

### 2. Agencies Must Establish New Regulatory Precedent Through Formal Adjudication or Notice and Comment.

The USCIS Ombudsman in 2010 found that the non-precedential AAO decisions violated L-1B policy instructions that agency adjudicators must follow and undercut the APA's notice and comment principles. (Add.-226, 228). The precedent in this Court is in accord.

In *Alaska Prof'l Hunters Ass'n v. FAA*, the FAA issued an informal publication in 1998 that repudiated the FAA's 1963 administrative decision exempting Alaskan hunting and fishing guides using light aircraft from its

49

"commercial pilot" regulations.  177 F.3d 1030 (D.C. Cir. 1999).  This Court held that the FAA violated the APA because it gave its commercial pilot regulations a long-standing and "definitive interpretation" (even if never memorialized in writing), and later "significantly revise[d] that interpretation" in 1998 without notice and comment.  *Id.* at 1034.  "When an agency has given its regulation a definitive interpretation, and later significantly revises that interpretation, the agency has in effect amended its rule, something it may not accomplish without notice and comment."  *Id.*

Here, USCIS's own Ombudsman criticized the agency for failing to adhere, without explanation in anything but non-precedential AAO decisions, to existing regulatory authority.  Even the AAO Decision in this case acknowledged, "The Puleo Memorandum of 1994 is often cited as the key agency document relating to the adjudication of specialized knowledge visa petitions."  (App.650).  Thus, the agency's unexplained departure from precedent, which resulted in a restrictive interpretation of "specialized knowledge," constituted an impermissible change in regulatory standards under the APA.  *See* 5 U.S.C. § 553.  The controlling authority in this circuit therefore compels the reliance protections set forth in the case law.

### 3. The District Court Ignored USCIS's Own Ombudsman When Concluding It Followed the Puleo and Ohata Memos.

In its decision, the District Court acknowledged the aforementioned APA authority but did so without any consideration of the contrary analysis from the OIG or the USCIS Ombudsman. Such a cursory consideration of Fogo's argument is not reasoned enough to withstand judicial scrutiny. The District Court did not entertain Fogo's most persuasive evidence and, in doing so, committed reversible error because it failed "to review the whole record" as required by APA Section 706.

### B. USCIS Impermissibly Prejudged Mr. Gasparetto's Case.

### 1. D.C. Circuit Case Law Requires Reversal of Agency Decisions Infected by Prejudgment.

The District Court found Defendants' following statement "potentially troubling":

> In view of USCIS's determination that these individuals do not qualify for L-1B 'specialized knowledge' visas and therefore that such visa petitions will not be approved in the future, the parties are at an impasse.

(App.108; App.27). But the District Court relied on the purported evidentiary failures to avoid further analysis of this issue. Once the evidentiary failures are overcome, as Fogo shows *supra*, this "troubling" evidence of prejudgment rises to the level of reversible error, because it is contrary to the APA's "reasoned decision making" requirement and to basic due process concepts.

51

In *Cinderella Career & Finishing Schools*, *Inc. v. FTC*, 425 F.2d 583 (D.C. Cir. 1970), this Court considered public speeches made by the FTC chairman critical of commercial practices of the plaintiff while the Commission was reviewing those practices and prior to finding them unlawful.  Despite a request that he recuse himself for such statements, the FTC Chairman refused.  *Id.* at 590-91.  This Court in *Cinderella* found that public pronouncements of an agency's negative view on key adjudicative facts in a pending case violate due process principles, and the FTC decision was reversed.  *Id.* at 591-92.

Evidence of agency prejudgment of a matter before it also calls into question whether the agency's decision was the result of "reasoned decision-making," therefore rendering the decision arbitrary and capricious.  As noted by the Supreme Court in *State Farm*, 463 U.S. at 52, an "agency must explain the evidence which is available, and must offer a 'rational connection between the facts found and the choice made,'" (quoting *Burlington Truck Lines*, *Inc. v. United States*, 371 U. S. 156, 168 (1962)).  Failure to provide such a connection is not "reasoned decision-making" and constitutes arbitrary and capricious conduct that must be reversed. *State Farm Insurance*, 463 U.S. at 52.  Prejudgment of a case before all of the "facts [are] found" disrupts the "rational connection between the facts found and the choice made," and seriously impairs any argument that the agency

52

determination was the result of reasoned decision-making. *Burlington Truck*

*Lines*, 371 U.S. at 168.

### 2. USCIS Prejudged Key Adjudicative Facts, Requiring Reversal.

There is significant evidence in the record of USCIS's negative prejudgment

of Fogo's L-1B petition—in addition to counsel's naked statement that Fogo's

"visa petitions will not be approved in the future." (App.27). This evidence of

negative prejudgment is significant and serious:

- The AAO's claim that Fogo failed to submit "any" evidence of Mr. Gasparetto's completing the training program, notwithstanding clear evidence in the record to the contrary, (App.664);
- The AAO's failure to acknowledge or consider authority cited by Fogo from its sister agencies, the OIG and the USCIS Ombudsman, that it had engaged in an unauthorized departure from agency L-1B precedent;
- Counsel for the government needed to supply a *post-hoc* rationalization for the AAO's mistaken assertion that there was no evidence of Mr. Gasparetto completing the training program, and its provision of inapplicable authority to do so. *See supra* Part II(C).

Taken together, this evidence supports the view that the Government was

determined from the outset to deny Fogo's L-1B petitions, to inflict administrative

and civil litigation delays instead of resolving the dispute, was prepared to

misrepresent key adjudicative facts in the record, and was not open to

reconsidering Fogo's legal arguments in a manner that reflected the reasoned

decision-making required by the APA.

53

USCIS's prejudgment of Fogo's petition is comparable in all material aspects to the adverse public statements made by the FTC Chairman against Cinderella Career & Finishing Schools, in that they concerned key adjudicative facts:  (i) whether Cinderella's advertising was impermissibly misleading, and (ii) whether Fogo's *churrasqueiros* possessed the specialized knowledge required for an L-1B visa.  As such, the due process rationale of *Cinderella* is equally applicable here.  *See* 425 F.2d at 590-92.

Further, the extensive evidence of USCIS's bias and prejudgment impairs any finding that USCIS engaged in reasoned decision-making when finally adjudicating the reopened Gasparetto L-1B petition.  In its effort to cure USCIS's avoidance of key evidence, government counsel supplied a *post-hoc* rationalization using inapplicable case law.  (App.70-71).  All of these factors disrupt a "rational connection" between the "facts found and the choice made" by USCIS, thus precluding any finding that the AAO decision was the result of rational decision-making.  *See State Farm Insurance*, 463 U.S. at 52.  As such, the bias and prejudgment of USCIS render its decision arbitrary and capricious, and that decision should be reversed.

## IV.  THE DISTRICT COURT ERRONEOUSLY APPLIED *CHEVRON* AND *SKIDMORE-MEAD* DEFERENCE.

To be clear, Fogo's challenge is to USCIS's unexplained departure from precedential interpretations of "specialized knowledge"—not the agency's

regulations or its precedential interpretations.  Nonetheless, the District Court afforded, without explanation, *Chevron* deference to the AAO's interpretation of "specialized knowledge."  (*See* App.106).  Even though Defendants conceded that *Chevron* does not apply, claiming only *Skidmore* deference, the District Court nevertheless afforded, without explanation, *Chevron* deference to the AAO's interpretation of "specialized knowledge."  (*See* App.106).  In a footnote, the District Court made clear it was relying on another district court case's analysis:

> Another member of this Court recently found that the USCIS is entitled to *Chevron* deference in its interpretation and application of statutes and regulations when reviewing visa petitions. *See*, *e.g.*, *Int'l Internship Programs v. Napolitano*, 853 F. Supp. 2d 86, 97 (D.D.C. 2012) (Leon, J.), *aff'd*, 718 F.3d 986, 988 (D.C. Cir. 2013) (affirming without deciding whether USCIS interpretations are entitled to *Chevron* deference).

(App.106, n.5).  This reliance was misplaced.  The case cited was an erroneous application of *United States v. Mead*, 533 US 218, 226-227 (2001), which sets forth the procedural requirements for *Chevron* deference.  Relying on that other district court decision, the District Court erred by affording *Chevron* deference to the AAO decision which was unpublished, non-precedential, and lacked the "force of law"—all required by *Mead* for *Chevron* deference to apply.  *See* 533 U.S. at 226-227.  The District Court also erred by conferring *Mead-Skidmore* deference in the alternative.

55

**A.    *Chevron* is Inapplicable Because the AAO Decision Does Not Carry "the force of law."**

> **1.    *Mead* Sets the Procedural Requirements for *Chevron* Deference.**

"Deference in accordance with *Chevron* . . . is warranted <u>only</u> 'when it appears that Congress delegated authority to the agency generally to make rules <u>carrying the force of law</u>, and that the a<u>gency interpretation claiming deference was promulgated in the exercise of that authority</u>.'" *Gonzales v. Oregon*, 546 U.S. 243, 255-56 (2006) (*quoting Mead*, 533 U.S. at 226-227).  The Supreme Court confirmed that the "force of law" requirement was unquestioned:  "[F]or *Chevron* deference to apply, the agency <u>must</u> have received congressional authority to determine the particular matter at issue <u>in the particular manner adopted</u>.  <u>No one disputes that</u>."  *City of Arlington*, *Tex. v. FCC*, 133 S. Ct. 1863, 1874 (2013) (emphasis added).

In *Mead*, the Supreme Court ruled that a Customs Service tariff classification deserved no deference under *Chevron* because Congress never intended such a ruling to carry the force of law.  533 U.S. at 234.  *Mead* explained that an agency typically interprets a statute by "mak[ing] rules carrying the force of law" through notice and comment rulemaking, or by engaging in formal adjudications that result in precedential decisions:

> We have recognized a very good indicator of delegation meriting Chevron treatment in express congressional authorizations to engage

in the process of rulemaking or adjudication that produces regulations or rulings for which deference is claimed. It is fair to assume generally that Congress contemplates administrative action with the effect of law when it provides for a <u>relatively formal administrative procedure tending to foster the fairness and deliberation that should underlie a pronouncement of such force</u>.

*Id*. at 229-30 (emphasis added).  Further, one year before deciding *Mead*, the Supreme Court held that a Department of Labor opinion letter did not merit *Chevron* deference because it was "not one arrived at after, for example, a formal adjudication or notice-and-comment rulemaking."  *Christensen v. Harris Cnty*., 529 U.S. 576, 587 (2000).  There is no question that the AAO Decision fails these tests under both *Mead* and *Christensen*.

### 2. Application of *Mead*.

Applying *Mead*, several Courts of Appeal have held that non-precedential, unpublished opinions of the BIA do *not* carry the force of law and, therefore, do not meet the procedural requirements for *Chevron* deference.  *See*, *e.g.*, *Rotimi v. Gonzales*, 473 F.3d 55, 57-58 (2d Cir. 2007) (unpublished BIA decision not relying on precedent for definition of contested term does not receive *Chevron* deference, because not "promulgated under [the agency's] authority to make rules carrying the force of law"); *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1009, 1011-14 (9th Cir. 2006) (same); *Barrios v. Holder*, 581 F.3d 849, 859 (9th Cir. 2008) ("A single-member BIA panel affirmed the IJ's decision in an unpublished, nonprecedential decision.  Such decisions are entitled to only *Skidmore*, rather than

57

*Chevron*, deference."); *Carpio v. Holder*, 592 F.3d 1091, 1097-1098 (10th Cir. 2010) (same); *Quinchia v. Att'y Gen.*, 552 F.3d 1255, 1258 (11th Cir. 2008) (unpublished BIA decision not relying on precedent does not receive *Chevron* deference). Other Courts of Appeals recognizing this issue have not decided it.[10]

Here, the AAO Decision is entitled to even less consideration for deference than an unpublished, non-precedential BIA decision. Unlike a BIA decision, the AAO Decision is the product of a purely informal adjudication instead of a formal asylum or removal hearing before an immigration judge. The deference that might be available to a formal adjudication under *Christensen v. Harris Cnty* is simply not available here.

### 3. Unpublished, Non-precedential AAO/BIA Decisions Do Not "carry the force of law."

Importantly, *this Court* never has held that unpublished, non-precedential BIA or AAO decisions merit *Chevron* deference, in light of *Mead*. Presumably for this reason, the District Court (in its footnote) relies solely upon another district court decision, *International Internship Programs v. Napolitano*, 853 F. Supp. 2d 86, 97 (D.D.C. 2012) (Leon, J.), with a critically-flawed *Chevron* analysis:

> USCIS is entitled to due deference under *Chevron*. Such deference is
> appropriate here, of course, because USCIS interpreted and applied

---

[10] *See, e.g.*, *Dobrova v. Holder*, 607 F.3d 297, 300 (2d Cir. 2010); *Cervantes v. Holder*, 597 F.3d 229, 233 n.5 (4th Cir. 2010); *Mushtaq v. Holder*, 583 F.3d 875, 877 (5th Cir. 2009); *Godinez-Arroyo v. Mukasey*, 540 F.3d 848, 851 (8th Cir. 2008).

> the relevant statutory and regulatory provisions to deny plaintiff's Q-1 visa petitions. *See Citizens Exposing Truth about Casinos v. Kempthorne*, 492 F.3d 460, 466 (D.C. Cir. 2007) (Chevron deference applies even in the absence of formal rulemaking or adjudication when agency action has the force of law).

853 F. Supp. 2d 86, 97 (D.D.C. 2012). Specifically, the court assumes—without any analysis—that the Q-1 visa denials at issue "carry the force of law" and that that was sufficient to satisfy *Mead* in *Kempthorne*, 492 F.3d at 466.

 *Kempthorne* itself makes clear how unfounded this assumption is. In *Kempthorne*, this Court accorded *Chevron* deference to the statutory construction of the Secretary of the Bureau of Indian Affairs, with respect to the Secretary's determination—accompanied with formal public notice—to take 78 acres of private farmland and put it in trust for use by an Indian tribe to operate a casino. *Id.* at 461, 465. This Court explained why that determination carried the "force of law":

> [The] determination [by the Secretary of the Bureau of Indian Affairs] that the "initial reservation" exception applied to the Sackrider property was <u>intended to have the force of law</u>, as it formed the basis for the Secretary's decision under the [Indian Reorganization Act] to acquire the property in trust for the [Tribe]. . . . The Secretary gave formal public notice in the Federal Register of the determination and the basis for it, including the opinion letter on which the Secretary relied.

*Id.* at 466-467.

 The critical aspects of the agency determination in *Kempthorne* simply do not exist in the VSC's unpublished, non-precedential immigration decisions at

issue in *International Internship*.  Indeed, in affirming *International Internship*, this Court specifically excepted the issue of *Chevron* deference.  *See Int'l Internship Program v. Napolitano*, 718 F.3d 986, 987, n.1 (D.C. Cir. 2013) ("[W]e need not determine whether the agency's interpretation is entitled to *Chevron* deference.").

### 4.     The AAO Decision Here Lacks the "Force of Law."

Applying *Mead* here, the AAO decision lacks the requisite "force of law" and does not qualify for *Chevron deference*.  An interpretation carrying "the force of law" typically manifests "formal administrative procedures tending to foster the fairness and deliberation that should underlie a pronouncement of such force."  *Id.* at 229-230.  None of these is present in the AAO Decision:

- Formality:  The AAO decision is unpublished, and it is not precedential.  (App.625-78).  It is binding only upon Fogo itself.  *See De Leon-Ochoa*, 622 F.3d at 350 ("[I]n light of *Mead*, the 'essential factor' in determining whether an agency action warrants *Chevron* deference is its precedential value") (quoting *Garcia-Quintero*, 455 F.3d at 1012).

- Fairness:  The AAO identified alleged evidentiary deficiencies (which Fogo previously lacked notice of)—but did not allow Fogo to

introduce evidence to remedy those alleged deficiencies (contrary to what the District Court believed).  *See supra* Part II(A).

- Deliberation:  The AAO ignored key evidence, and its evidentiary analysis was materially flawed.  The AAO ignored the OIG Report and the USCIS's Ombudsman Report, upon which Fogo relied extensively.  Thus, the AAO here failed to deliberate appropriately.

Further, affording *Chevron* deference to unpublished, non-precedential AAO decisions enables an agency to evade its notice and comment rulemaking obligations, subverting APA principles.  If properly applied, *Mead* helps prevent this by ensuring that reviewing courts afford less deference to those agency actions or interpretations that lack procedural safeguards.  Here, the AAO Decision lacked those safeguards and any indicia that it carried the force of law and, therefore, should not have been afforded *Chevron* deference.

## B.     *Skidmore-Mead* **Deference also Does Not Apply.**

The District Court erred by concluding, in a footnote, that *Skidmore-Mead* deference applied.  (App.106, n.5) ("[F]or the same reasons for which the Court finds that *Chevron* deference is appropriate, the Court finds also that the decision was sufficiently thorough, logical, and persuasive to merit deference under *Skidmore* and *Mead*.").

61

In *Mead*, the Supreme Court held that if *Chevron* does not apply, the agency interpretation still may qualify for some deference under *Skidmore*. "The weight of such a judgment in a particular case will depend upon the <u>thoroughness</u> evident in its consideration, the <u>validity of its reasoning</u>, its <u>consistency</u> with earlier and later pronouncements, and all those factors which give it <u>power to persuade</u>, if lacking power to control." *Skidmore*, 323 U.S. at 140 (emphasis added). None of these is present here:

- <u>Thoroughness</u>: The AAO repeatedly ignores key evidence. *See supra* Part II(A). The AAO also ignores Fogo's key policy-based evidence: the OIG Report and the USCIS Ombudsman Report. The AAO ignores Fogo's management's and culinary experts' opinions—and instead relies on the websites of Fogo's competitors to refute these opinions.

- <u>Validity of its Reasoning</u>: The AAO acknowledges that, in 1991, "the INS proposed and adopted 'a more liberal interpretation of specialized knowledge' based on the new statutory definition—but refuses to square this with its decision that the 1970 Act's "narrow and restrictive" approach still applies. (App.649).

- <u>Consistency</u>: The agency's post-2006 interpretation of "specialized knowledge"—reflected in the AAO decision—is remarkably

62

inconsistent with its 15 years of more liberal construction of this term

in the period immediately preceding 2007.  This point was confirmed

by USCIS's own Ombudsman.  (Add.-226).

- Power to Persuade: The AAO calls the prior 251 L-1B approvals

  "material and gross error"—but does not explain how this "error"

  could have repeated itself so many times over almost 10 years.

  (App.677).  The AAO's failure to consider the evidence by Fogo, *see*

  *supra* Part II(A), and the inconsistency in its approach, resulted in an

  unpersuasive decision that should be rejected by this Court.

USCIS therefore fails the *Skidmore/Mead* test.  No form of deference is due

the AAO Decision, and therefore, the District Court's holding to the contrary

should be reversed.

## CONCLUSION

Fogo recognizes that "the proper course, except in rare circumstances, is to

remand to the agency for additional investigation or explanation."  *Fla. Power &*

*Light Co. v. Lorion*, 470 U.S. 729, 411 (US 1985).  But here, Fogo is inherently

prejudiced on remand.  USCIS represented to the District Court that it will not

approve Fogo's L-1B *churrasqueiro* petition.  Further, the Service steadfastly

denies that there has been *any* change in its interpretation of the L-1 regulations

since 1991, refusing to acknowledge significant contrary evidence.  Thus, simply

remanding Fogo's L-1B petition to USCIS to provide a further explanation will not provide meaningful relief to Fogo.

Accordingly, because "rare circumstances" exist, *see id.*, Fogo respectfully requests that the Court reverse the District Court's judgment, and remand to the District Court, with specific instructions, in turn, to remand to USCIS to adjudicate the Gasparetto Petition pursuant to the legal standard articulated in its 1991 L-1B Regulations, its 1994 Puleo Memo, and its 2002 and the 2004 Ohata Memos, without reliance on the analysis of "specialized knowledge" contained in *Matter of GST* that was described negatively in the 2010 USCIS Ombudsman's Report.  (*See* Add.-88; App.42, 46, 48; Add.-226; Add.-329-330).  We respectfully submit that these instructions are the only way to provide meaningful relief to Fogo in this nearly four-year dispute over the Gasparetto Petition.

Respectfully submitted,

/s/ Carl W. Hampe
Carl W. Hampe                              On Brief:
Steve Chasin                                   Timothy C. D'Arduini
BAKER & MCKENZIE LLP
815 Connecticut Avenue, NW          Not admitted before the
Washington, DC  20006                     U.S. Court of Appeals for the
(202) 452-7000                                D.C. Circuit

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
      28.1(e)(2) or 32(a)(7)(B) because:

      [ X ] this brief contains [*13,961*] words, excluding the parts of the brief
      exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

      [    ] this brief uses a monospaced typeface and contains [*state the number
      of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P.
      32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
      32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

      [ X ] this brief has been prepared in a proportionally spaced typeface using
      [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

      [    ] this brief has been prepared in a monospaced typeface using [*state
      name and version of word processing program*] with [*state number of
      characters per inch and name of type style*].

Dated: <u>January 30, 2014</u>          <u>/s/ Carl W. Hampe</u>
                                         *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 30th day of January, 2014, I caused this Brief of
Appellant, Addendum and Joint Appendix to be filed electronically with the Clerk
of the Court using the CM/ECF System, which will send notice of such filing to
the following registered CM/ECF users:

Aram A. Gavoor
U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
Post Office Box 686, Ben Franklin Station
Washington, DC  20044
(202) 305-8014

R. Craig Lawrence
Brendan Tracz
OFFICE OF THE U.S. ATTORNEY
555 4th Street, NW
Washington, DC  20530
(202) 252-2500

*Counsel for Appellees*

I further certify that on this 30th day of January, 2014, I caused the required
copies of the Brief of Appellant, Addendum and Joint Appendix to be hand filed
with the Clerk of the Court and the required copies of the Sealed Volumes of the
Joint Appendix to be served via UPS Ground Transportation, upon Counsel for the
Appellees at the above addresses.

/s/ Carl W. Hampe
*Counsel for Appellant*